# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2390

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Ben R. Bush, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 16, 2000

Filed:    June 7, 2001

_____

Before LOKEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
    Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Ben Bush pleaded guilty to conspiring to commit securities fraud, *see*
15 U.S.C. § 78j(b), 18 U.S.C. § 371, the district court sentenced him to 33 months
imprisonment and ordered him to pay restitution in the amount of approximately
$985,500 to the victims of his crime.  Mr. Bush appeals his sentence, arguing that the
district court miscalculated the amount of loss attributable to him in determining his
offense level, erroneously increased his offense level pursuant to U.S.S.G. § 3B1.3, and
ordered him to pay excessive restitution.  We affirm the district court's finding of the

amount of loss and the district court's decision to increase Mr. Bush's offense level under § 3B1.3, but vacate and remand for recalculation of the order for restitution.

## I.

Mr. Bush contends first that the district court determined his criminal offense level incorrectly because it miscalculated the amount of loss attributable to him. During sentencing, the district court found that Mr. Bush had caused a loss in excess of $800,000 and was thus subject to an eleven-level increase in his offense level. *See* U.S.S.G. § 2F1.1(b)(1)(L). Mr. Bush argues that losses that Carolyn Cowden, Bob Warden, and Sue Warden suffered should not have been included in the district court's calculations because those losses resulted from dealings unrelated to the offense for which Mr. Bush was convicted.

As relevant here, the conspiracy with which Mr. Bush was charged involved his sale of unregistered promissory notes issued by his company, Global Productions, Inc. According to the indictment, Mr. Bush diverted the money generated by these sales and never used it for Global's business purposes. Mr. Bush maintains that since he never sold unregistered promissory notes for Global Productions, Inc., to either Ms. Cowden or the Wardens, their losses should not be counted in calculating the loss attributable to him. We disagree.

Under § 1B1.3, a district court is authorized to take into account certain relevant conduct, in addition to offense conduct, when determining the sentencing range of an offender. Because Mr. Bush's crime was of a character that could have permitted grouping for his multiple transactions, *see* § 3D1.2, the pertinent guideline with respect to relevant conduct is § 1B1.3(a)(2). The district court therefore was allowed to take into account all acts and omissions by Mr. Bush that constituted "the same ... common scheme or plan as the offense of conviction," *see* § 1B1.3(a)(2); *see also United States v. Ballew*, 40 F.3d 936, 943-44 (8th Cir. 1994), *cert. denied*, 514 U.S. 1091 (1995).

Mr. Bush borrowed money from Ms. Cowden promising that it would be used to further the business of Global Productions, Inc. He took money from the Wardens purportedly to buy stock in Global Productions, Inc., and gave them a handwritten note promising repayment. In both of these instances he diverted the proceeds to other uses.

It is plain that the dealings with Ms. Cowden and the Wardens bear a strong resemblance to the sales of unregistered promissory notes with which the indictment charged Mr. Bush. In all of these transactions, Mr. Bush used Global Productions, Inc., as an investment lure, and a promise of repayment to convince his victims to give him money, and then diverted the money rather than devoting it to the purposes that he originally proposed. The district court thus found that Mr. Bush's dealings with Ms. Cowden and the Wardens were part of "the same ... common scheme or plan" as the offense conduct, *see* § 1B1.3(a)(2), and therefore constituted relevant conduct for sentencing purposes. We do not think that this conclusion was error. These transactions share a "common purpose" and a "similar *modus operandi*," *see* § 1B1.3, application note 9(A), and so could be deemed part of a common scheme or plan. *See also Ballew*, 40 F.3d at 943-44.

## II.

Mr. Bush also argues that the district court erred when it added two levels to his offense level because it determined that he had used a special skill to further his fraudulent scheme. *See* U.S.S.G. § 3B1.3. We give "great deference" to the district court's factual determinations regarding the use of a special skill and review those findings under the clearly erroneous standard. *United States v. Roggy*, 76 F.3d 189, 193 (8th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

A district court may order a two-level sentencing enhancement for a defendant if it believes that "the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense," *see* § 3B1.3. " 'Special skill'

refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing," *id.*, application note 3.

The district court found that Mr. Bush, as a former investment counselor and manager at a major national brokerage firm, had a special skill that helped him defraud his victims. Mr. Bush maintains, however, that no special skill was required to sell unregistered promissory notes and that anyone, even an unskilled person, could have carried out the transactions involved in this case. This argument is without merit. "The legal question is not whether the task could be performed by a person without special skills, but whether the defendant's special skills aided him in performing the task," *United States v. Covey*, 232 F.3d 641, 647 (8th Cir. 2000). *See also United States v. Graham*, 60 F.3d 463, 469, 469 n.3 (8th Cir. 1995).

In this case, the district court reasoned that Mr. Bush's extensive training and experience allowed him to draw victims into his fraud much more easily than someone without his skill could have. It also found that Mr. Bush's understanding of the intricacies of executing promissory notes and collateralizing them helped him establish a scheme that an otherwise unskilled person might have found more difficult to set up. We do not think that the district court's finding was clearly erroneous, and we thus hold that it did not err in applying the two-level enhancement. *See Roggy*, 76 F.3d at 193-94.

## III.

Mr. Bush maintains finally that the district court ordered him to pay an excessive amount of restitution. Under 18 U.S.C. § 3663(a)(1)(A), a district court has the authority to order a defendant to "make restitution to any victim" of the offense of conviction. We review the district court's application of the restitution statute *de novo*. *See United States v. Ross*, 210 F.3d 916, 924 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 405 (2000).

During his sentencing hearing, Mr. Bush presented copies of personal checks supposedly documenting his partial repayments to some of the victims of his fraud. The district court, however, declined to give Mr. Bush credit for the amount of these checks because it was unable to determine what the checks were for. Mr. Bush insists that he should have received credit, and that the amount of the restitution that he was ordered to pay should be reduced *pro tanto*.

We disagree. A defendant ordered to make restitution is not entitled to credit if he fails to offer proper proof of his repayments. *See United States v. Bartsh*, 985 F.2d 930, 933 (8th Cir. 1993), *cert. denied*, 510 U.S. 1170 (1994); *see also United States v. Baker*, 200 F.3d 558, 561 (8th Cir. 2000). In this case, the district court was unable to determine whether Mr. Bush had repaid some of his victims because the checks that he provided as proof contained no facial indication of their purpose. The district court offered to hold a hearing to consider the evidence further, but Mr. Bush turned down the opportunity to substantiate his allegations. Because the district court was presented only with ambiguous evidence of repayment, we hold that it did not err in denying Mr. Bush credit when it calculated the amount of restitution that he owed.

Mr. Bush also contends that the district court should not have ordered him to pay restitution to Ms. Cowden, the Wardens, Lorenzo Stigger, and Herbert Sudbury, because his transactions with them were not part of the conduct laid in the indictment. He points out that, in his dealings with these individuals, he never once sold them unregistered promissory notes issued by Global Productions, Inc., or any other securities. Mr. Bush therefore argues that the district court lacked the authority to order him to pay restitution to these individuals because they did not qualify as victims of the charge of which he was convicted.

For purposes of sentencing, the term "victim" includes any "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a

scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern," *see* 18 U.S.C. § 3663(a)(2). We have previously interpreted this statute to mean that a district court may award restitution to individuals who suffered from a defendant's criminal activity beyond what was described with particularity in the indictment, so long as the indictment "details a broad scheme encompassing transactions 'beyond those alleged in the counts of conviction,' " *United States v. Manzer*, 69 F.3d 222, 230 (8th Cir. 1995), quoting *United States v. Welsand*, 23 F.3d 205, 207 (8th Cir. 1994), *cert. denied*, 513 U.S. 1045 (1994). We therefore " 'look to the scope of the indictment' to determine whether an award is 'within the outer limits of a permissible restitution order,' " *United States v. Ramirez*, 196 F.3d 895, 900 (8th Cir. 1999), quoting *United States v. Jackson*, 155 F.3d 942, 949, 950 (8th Cir. 1998), *cert. denied*, 525 U.S. 1059 (1998).

In this case, we think that Mr. Stigger can fairly be considered a victim of Mr. Bush's offense conduct. Mr. Stigger was an investment counselor who encouraged some of his clients to do business with Mr. Bush. Many of these clients eventually became victims of Mr. Bush's fraud when they purchased unregistered promissory notes issued by Global Productions, Inc., from him. Although Mr. Stigger never directly gave any money to Mr. Bush for the notes, he paid money from his own pocket to cover some of the losses that his clients incurred from their dealings with Mr. Bush. The district court determined that he was entitled to restitution of the amount he paid out. We find no error in this conclusion since it appears to us that this situation simply involves a substitution of one victim for others: Any other result would allow Mr. Bush to escape paying restitution that he quite obviously owed.

We conclude, however, that the district court erred in ordering Mr. Bush to pay restitution to Ms. Cowden, the Wardens, and Mr. Sudbury because we do not think that they were "victims" within the meaning of the relevant statute. The conduct for which Mr. Bush was indicted had to do with the sale of unregistered promissory notes issued

by Global Productions, Inc. Therefore, for an individual to be a victim of the conspiracy with which Mr. Bush was charged, he or she must have been a party to a transaction of this description.

Ms. Cowden, the Wardens, and Mr. Sudbury did not participate in any transaction with Mr. Bush that corresponded with the conduct laid in the indictment, because Mr. Bush did not sell them any promissory notes that Global Productions, Inc., issued. While the transactions with Ms. Cowden, the Wardens, and Mr. Sudbury were fraudulent and constituted crimes on Mr. Bush's part, and the conduct involved in those transactions was, as we have said, relevant for sentencing purposes, we cannot say that these crimes were committed pursuant to the conspiracy for which Mr. Bush was charged and of which he was convicted. Although similar in purpose and design, these offenses were different from the offense laid in the indictment. We thus hold that Ms. Cowden, the Wardens, and Mr. Sudbury were not "directly harmed," *see* 18 U.S.C. § 3663(a)(2), by Mr. Bush's conspiracy and were not entitled to restitution. *See Ramirez*, 196 F.3d at 900.

## IV.

For the reasons indicated, we affirm the district court's judgment in part and remand the case for recalculation, consistent with our holdings, of the order for restitution.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-