# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3270

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jedediah W. Regenwether, | * | [PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2002

Filed: August 27, 2002

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

PER CURIAM.

Jedediah Regenwether was convicted of two counts of solicitation to commit a crime of violence, one count of aiding and abetting attempted bank robbery, one count of aiding and abetting bank robbery, and one count of conspiracy to commit bank robbery. He was sentenced to 135 months' imprisonment on each of the aiding and abetting charges, 120 months' imprisonment on each of the solicitation charges, and 60 months' imprisonment on the conspiracy charge, to be served concurrently. The district court imposed a three-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(E) after finding that Regenwether's possession of a firearm was relevant

conduct under U.S.S.G. § 1B1.3. It is from this three-level enhancement that Regenwether appeals.

This case involves two sets of interrelated criminal convictions. On March 13, 1998, Regenwether and Vincent Abney robbed the Boone County Community Credit Union (the Credit Union robbery). In addition to having perpetrated the Credit Union robbery, Regenwether and Abney also had attempted to rob the Security State Bank in Radcliffe, Iowa (the Radcliffe bank). Subsequently, Regenwether attempted to recruit James Olscewski for a second attempt to rob the Radcliffe bank. Olscewski became an FBI informant, and Regenwether was arrested. Regenwether cooperated with the FBI and during the course of that cooperation he admitted that he had purchased a shotgun to use in the Credit Union robbery. A tape recording of his attempt to recruit Olscewski revealed that part of Regenwether's plan for robbing the Radcliffe bank was to brandish the shotgun in an effort to intimidate bank personnel into giving him the money. No charges resulted from the conduct surrounding the Radcliffe bank. Regenwether pleaded guilty to the Credit Union robbery and was sentenced to eighteen months in prison.

Upon Regenwether's release from prison he entered a halfway house, where he met Benjamin Kirk. After their release from the halfway house, Kirk and Regenwether conspired on a third attempt to rob the Radcliffe bank. On September 30, 1999, Kirk, following Regenwether's instructions, entered the bank but left without receiving any money. On November 10, 1999, Regenwether and Kirk successfully robbed the First American State Bank and were arrested on November 22, 1999. Regenwether was charged for conduct related to the First American robbery and the aborted Radcliffe bank attempt. The Radcliffe bank charges included a conspiracy charge that dated back to Regenwether's aborted attempts to rob the Radcliffe bank with Abney and Olscewski. Regenwether was convicted on all charges in May of 2001.

At sentencing, the government objected to the presentence report's failure to include an enhancement for possession of the shotgun as conduct relevant to the Radcliffe bank charges. Following a hearing, the district court determined that Regenwether's possession of the shotgun before his conviction for the Credit Union robbery was conduct relevant to the Radcliffe bank charges. The court made two alternative findings of fact. First, possession of the shotgun was relevant conduct because Regenwether intended to use the shotgun in the second attempt to rob the Radcliffe bank. Second, possession of the shotgun was relevant conduct because Regenwether used it to try to recruit Olszewski as a co-conspirator to rob the Radcliffe bank.

"Whether an act or omission constitutes relevant conduct is a factual determination." United States v. Plumley, 207 F.3d 1086, 1091 (8th Cir. 2000) (citing United States v. Georges, 146 F.3d 561, 562 (8th Cir. 1998)). Thus, we review for clear error. United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997) (citing United States v. Lamere, 980 F.2d 506, 510 (8th Cir. 1992)).

Regenwether argues that his 1998 conviction mooted any relevancy of the 1998 conduct to the 1999 charges. Regenwether acknowledged at sentencing that the shotgun was not used to enhance his sentence for the Credit Union robbery. Possession of the shotgun was relevant conduct as to the conspiracy to rob the Radcliffe bank. The dates of the conspiracy, as charged in the indictment, were from March 1998 until November 10, 1999. The jury found that a visit to the Radcliffe bank on March 31, 1998, and the meeting between Regenwether and Olscewski on April 1, 1998, were overt acts in furtherance of the conspiracy. Both of those acts predate Regenwether's first conviction and clearly relate to the conspiracy to rob the Radcliffe bank. Thus, we find that the district court did not commit clear error in determining that possession of the shotgun was relevant conduct and in imposing the three level increase.

We also reject Regenwether's assertion that Application Note 8 to § 1B1.3 prohibits the consideration of the shotgun as relevant conduct in this case. Application Note 8 states that "offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense . . . is not considered as part of the same course of conduct . . . as the offense of conviction." Application Note 8 is limited by its terms to offense conduct under § 1B1.3(a)(2), however. In turn, subsection (a)(2) applies only to offenses cross referenced under § 3D1.2(d). Bank robbery is not so cross referenced; thus, Application Note 8 does not apply.

The sentence is affirmed.

BRIGHT, Circuit Judge, concurring.

I have previously written about the upside down world of the Sentencing Guidelines. See United States v. Smiley, 997 F.2d 475, 483 (8th Cir. 1993) (Bright, J., dissenting) (suggesting that sentences imposed under the guidelines where no rules of evidence apply and where sentencing judges often summarily approve probation officer recommendations seem to come from an Alice in Wonderland world where up is down and down is up); United States v. Galloway, 976 F.2d 414, 438 (8th Cir. 1992) (Bright, J., dissenting) (comparing sentences imposed under the relevant conduct provisions of the guidelines to an Alice in Wonderland world in which words lose their real meaning and down is up and up is down). I am not alone in making such a comparison. United States v. Frias, 39 F.3d 391, 393 (Oakes, J., concurring).

Here we have another example of the application of the Sentencing Guidelines to inflate a sentence for reasons that seem nonsensical.

Jedediah Regenwether challenges the district court's application of a three-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(E) based upon

Regenwether's possession of a shotgun, which the district court deemed relevant conduct under U.S.S.G. § 1B1.3. The government argues that the gun possession was relevant conduct connected to Regenwether's 1998 robbery activities, which were incorporated into the instant offense via the conspiracy count.

Regenwether argues that the three-level increase should not apply because possessing the shotgun is not relevant conduct with respect to his 1999 crimes in light of defendant's intervening arrest, prosecution, and incarceration for one of the 1998 robberies.[1] Police seized the gun when they arrested Regenwether in 1998. The present case stems from 1999 robbery activities. The 1998 possession of a shotgun should have no impact on the instant case, according to Regenwether, because the gun played no role in the 1999 robberies as evidenced by the fact that the indictment makes no mention whatsoever of the gun, and the facts reveal that the gun was not used in the planning or execution of the 1999 robberies.

In Regenwether's view, the government is trying to use the conspiracy count to pull in the 1998 pre-incarceration gun possession as relevant conduct in order to enhance Regenwether's sentence.[2] I think that Regenwether is absolutely correct.

---

[1]As the majority notes, Regenwether pleaded guilty to the 1998 Credit Union robbery, but the government did not file charges on the two alleged 1998 attempted robberies of the Radcliffe Bank. Those attempted robberies, however, are included in the conspiracy count of the instant case, and form the basis for including the shotgun as relevant conduct.

[2]Regenwether's full argument is that relevant conduct, like conspiracies, must have a beginning and an end. He argues that his intervening incarceration should prevent the 1998 gun possession from being considered relevant conduct in the 1999 robberies. Regenwether's 1998 conspiracy with Abney is a distinct conspiracy from the 1999 association with Kirk.

Unfortunately, the law of conspiracy and the applicable sections of the Sentencing Guidelines allow precisely this type of enhancement.

The jury convicted Regenwether of a conspiracy going back to March of 1998. The attempted Radcliffe bank robbery was an object of this conspiracy, as was the March 31 meeting between Regenwether and Olszewski. Based on the jury's verdict and U.S.S.G. § 1B1.3, the trial court could properly determine that the gun was conduct relevant to the conspiracy count.

Frankly, it is situations like this that have led me to conclude that many of the Guidelines make little sense. The defendant committed certain crimes in 1998, he served time for the charges the government brought at that point, and surrendered his shotgun. Now his offense level is enhanced three levels for possession of a gun that he surrendered before the vast majority of the unlawful conduct charged by the government occurred. This may be the current state of the law, but does it make sense?

Even though I am obligated under existing law to concur, I say it is time for a change. Again, I reiterate my call for abolishing or radically changing the Sentencing Guidelines and adopting a more fair and just system. See e.g., United States v. England, 966 F.2d 403, 411 (8th Cir. 1992) (Bright, J., concurring) ("In too many instances, the sentences directed by the guidelines waste the lives of men and women. . . . *It is time for a re-evaluation and change*.") (emphasis in original); see also United States v. Chavez, 230 F.3d 1089, 1093 (8th Cir. 2000) (Bright, J., concurring) ("'Is anyone out there listening?' If not, isn't it about time?").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.