# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3407

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| James Lester Killgo III, | * |
| | * |
| Appellant. | * |

_____

Submitted: November 16, 2004
Filed: February 9, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

James L. Killgo III pleaded guilty to wire fraud and money laundering arising out of a single dealing with Access Air, an Iowa-based airline. Over Killgo's objection, the district court[1] considered Killgo's prior relationships with other aviation companies seeking to lease aircraft as relevant conduct under United States Sentencing Guideline § 1B1.3. Killgo now appeals his sentence arguing that the

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

district court erred in considering his prior dealings as relevant conduct.[2] We find no error and affirm.

In 1991, Killgo and Irving Oestreich started an aircraft leasing company in Florida called Interjet. In December 1997, Interjet negotiated a contract with Access Air to secure leases on two aircraft. Access Air wired Interjet a $400,000 deposit for leases on two Boeing 737 aircraft. After Interjet received the wire, Killgo and Oestreich withdrew the money and deposited the funds into separate overseas bank accounts. Interjet never delivered the two 737s to Access Air and never refunded the $400,000. On the same day that the aircraft were scheduled to be delivered to Access Air, Interjet filed for bankruptcy. It was later revealed that during its seven years of operation, Interjet never actually leased any aircraft. The corporation had a checkbook, but no accounting service, no general ledger, no financial records, and no tax returns.

On March 27, 2002, Killgo and Oestreich were jointly indicted in the Southern District of Iowa for fraud arising out of their dealings with Access Air through

---

[2]Killgo also argues that the United States Supreme Court decision in *Blakely v. Washington*,124 S.Ct. 2531 (June 24, 2004), requires reversal of his sentence. The reasoning in *Blakely* was recently extended to the Federal Sentencing Guidelines. *See United States v. Booker*, ___ U.S. ___, Nos. 04-104, 04-105 (U.S. Jan. 12, 2005) (Stevens, J.). Nonetheless, in his plea agreement, Killgo waived his right to appeal "any sentence imposed" except "any issues solely involving a matter of law brought to the court's attention at the time of sentencing at which the court agrees further review is needed." Killgo did not bring any issue akin to *Blakely* or *Booker* to the district court's attention. The fact that Killgo did not anticipate the *Blakely* or *Booker* rulings does not place the issue outside the scope of his waiver. *See, e.g., United States v. Johnson,* 67 F.3d 200 (9th Cir. 1995); *see also United States v. Rutan*, 956 F.2d 827 (8th Cir. 1992) (explaining that an appeal waiver can waive a right unknown to the defendant), *overruled in part by United States v. Andis*, 333 F.3d. 886, 892 n.6 (8th Cir. 2003) (en banc); *United States v. Rubbo,* No. 04-10874 (11th Cir. Jan. 21, 2005) (holding that argument made under *Booker* fell within scope of appeal waiver).

Interjet. Killgo pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) for his actions in dealing with Interjet. The wire fraud resulted in a $400,000 loss to Access Air.

After the plea, a pre-sentence report (PSR) was prepared for Killgo. The PSR recommended a two-level increase for relevant conduct under U.S.S.G. § 1B1.3. The PSR explained that discovery revealed Interjet had defrauded thirteen different persons/entities for a total of $1,959,192.95. However, according to the PSR, the government stated that it was only able to prove the losses of Access Air at $400,000, Falcon Air at $190,000 in July 1997, Lineas Aereas Allegro at $295,000 in July 1997, and Southend Cargo at $350,000 in October 1997. Accordingly, the PSR recommended that Killgo's sentencing range be based on a total loss of $1,235,000.

Killgo objected to the loss calculation of $1,235,000 and argued that it should be calculated solely on the $400,000 loss suffered by Access Air. The district court conducted a hearing on relevant conduct in assessing Killgo's sentencing range. At the hearing, Killgo argued that the contracts between the other air carriers were not relevant conduct as contemplated by the Guidelines. He indicated that some contracts involved federal drug and arms investigations in which he cooperated with the United States Government. In addition, he argued that the other air carriers had breached their leases, and, thus, his actions were not fraudulent.

The district court concluded that the unfulfilled leases with the other air carriers constituted relevant conduct under U.S.S.G. § 1B1.3. Consequently, Killgo's sentencing range was between thirty-three and forty-one months' imprisonment. The district court sentenced him at the lower end of the range–thirty-three months. Killgo

then filed this appeal, maintaining that the losses of the three separate air carriers should not be considered relevant conduct.[3]

We review the sentence imposed for unreasonableness, judging it with regard to the factors in 18 U.S.C. § 3553(a). *United States v. Booker*, ___ U.S. ___, Nos. 04-104, 04-105 (U.S. Jan. 12, 2005) (Breyer, J.).[4] Killgo's appeal relates directly to § 3553(a)(4)(A); that is, he essentially claims that the reasonableness of his sentence is directly linked to the district court's misapplication of a relevant Guideline. Stated another way, Killgo's argument on appeal is that the district court erred in determining relevant conduct under the Guidelines thus rendering his sentence of thirty-three months' imprisonment unreasonable.[5] Whether an act or omission

---

[3]The guideline provision applicable to fraud cases provides for a graduated increase in the base offense level depending on the amount of loss resulting from conduct relevant to the count of conviction. U.S.S.G. § 2F1.1 (deleted by consolidation with U.S.S.G. § 2B1.1, Nov. 1, 2001). Under the Sentencing Guidelines, the base offense level for fraud is adjusted upward if the loss resulting from the fraud exceeded $2,000. *See* U.S.S.G. § 2F1.1(b). Where the loss is greater than $800,000 but not more than $1,500,000, eleven points are added. U.S.S.G. § 2F1.1(b)(1)(L). If the loss were calculated at $400,000 as Killgo suggests, only nine points are added. U.S.S.G. § 2F1.1(b)(1)(J).

[4]Prior to the United States Supreme Court's ruling in *Booker*, we reviewed the application of sentencing guidelines *de novo*. *United States v. Red Elk*, 368 F.3d 1047, 1051 (8th Cir. 2004). The Supreme Court has directed Circuit Courts to apply its holdings in *Booker* to all cases on direct review. *United States v. Booker*, ___ U.S. ___, Nos. 04-104, 04-105 (U.S. Jan. 12, 2005) (Breyer, J.) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). While Killgo's appeal waiver is sufficient to bar his Sixth Amendment claim, we recognize that it did not waive the application of a constitutional standard of review on appeal.

[5]Relevant conduct also relates to the "history and characteristics of the defendant," § 3553(a)(1), as well as the need to "protect the public from further crimes of the defendant," § 3553(a)(2)(C). Using relevant conduct in sentencing a

constitutes relevant conduct, under the Sentencing Guidelines, is a factual determination, which we review for clear error. *United States v. Regenwether*, 300 F.3d 967 (8th Cir. 2002).

The Guidelines generally provide that specific offense characteristics, such as the calculation of fraud losses, are determined on the basis of "relevant conduct," not the acts underlying the offense of conviction. *See* U.S.S.G. § 1B1.3(a). Relevant conduct under the Guidelines includes, "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Multiple fraud offenses are grouped under § 3D1.2(d), so relevant conduct for purposes of sentencing Killgo includes all fraudulent acts or omissions "that were part of the same course of conduct or common scheme or plan" as his offense of conviction.

Section 1B1.3(a)(2) allows the district court to consider all acts and omissions by Killgo that constituted "the same . . . common scheme or plan as the offense of conviction." Under this guideline, a district court should consider the "'similarity, regularity, and temporal proximity' of the conduct in determining whether it is part of the same course of conduct or common scheme or plan." *United States v. Anderson*, 243 F.3d 478, 485 (8th Cir. 2001) (citations omitted). "Common scheme or plan" as used in § 1B1.3(a)(2) is construed broadly in determining relevant conduct for sentencing purposes. *United States v. Berry,* 212 F.3d 391, 393 (8th Cir. 2000). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*" U.S.S.G. § 1B1.3 comment. (n.9).

---

defendant also aids in the "need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6).

The district court's determination of Killgo's relevant conduct is entirely consistent with our holdings in similar cases.[6] In this case, Killgo used Interjet as the

[6]In *United States v. Bush*, 252 F.3d 959 (8th Cir. 2001), Bush was convicted of diverting money from the sale of unregistered promissory notes issued by his company. In calculating total losses, the district court considered instances where Bush diverted borrowed funds that he promised would be used to further his company. *Id.* Bush argued that only losses attributable to the sale of unregistered promissory notes could be used to calculate total losses, and that the district court erred in aggregating the losses from the borrowed funds. *Id.* We affirmed the district court's application of § 1B1.3 reasoning that Bush's dealings bore a strong resemblance, and, thus, were part of "the same . . . common scheme or plan," which constituted relevant conduct. *Id.*

Similarly, in *United States v. Howard*, 235 F.3d 366 (8th Cir. 2000), Howard and Robinson were indicted for a scheme involving the sale and trade of annuities. Howard and Robinson told investors that they could pool money to trigger a leveraged line of credit and receive a profit from the resale of the annuities. *Id.* In a separate instance, Robinson told a different set of investors in Iowa that they could pool their money to "trigger a line of credit" to purchase annuities, which would then be resold at a profit. *Id.* We held that Robinson's actions in Iowa "were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at 373. Specifically, Robinson's statements to the Iowa investors were identical to the ones made by him to the investors involved in the indicted offenses. *Id.* We concluded that the criminal activity in Iowa and the criminal activity in the indictment involved the same *modus operandi*, and, thus, constituted "relevant conduct" for sentencing purposes. *Id.*

Likewise, in *United States v. Heath*, 122 F.3d 682 (8th Cir. 1997), we held that a defendant's fraudulent activity connected with medical facilities involved a common scheme and *modus operandi* for purposes of U.S.S.G § 1B1.3. In that case, Heath pleaded guilty to submitting false insurance claims after staging a "slip and fall" and gaining admission to hospitals. *Id.* Heath also gained admission to hospitals throughout the country by falsely complaining of other medical problems in an effort to fraudulently procure controlled substances. *Id.* Heath argued that the hospital and medical services not predicated on a slip and fall insurance claim were not relevant

common business front from which to solicit his victims. Each case was premised on Interjet securing a lease for a transport grade aircraft. Furthermore, Killgo executed substantially similar documents in setting up each separate fraudulent transaction. The four acts occurred within months of each other. In addition, Killgo operated the scheme with the same accomplice. We hold that Killgo's dealings are part of the same common scheme or plan. Accordingly, the district court properly considered the three dealings with Lineas Aereas Allegro, Southend Cargo, and Falcon Air as relevant conduct under § 1B1.3. Based on the relevant consideration, we cannot say that Killgo's thirty-three month sentence is unreasonable or that the district court erred.

The judgment of the district court is affirmed.

_____

---

conduct to the offense of wire fraud. *Id.* We rejected that argument explaining that all of Heath's activity involved gaining admission to hospitals by falsely complaining of pain. *Id.*