# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3210

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Stacy Winters, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 17, 2005
Filed: August 9, 2005

———————

Before MURPHY, HEANEY, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Stacy Winters pleaded guilty to voluntary manslaughter and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 1112, 1153, 924(c). Under the United States Sentencing Guidelines, Winters was subject to a maximum sentence of 191 months' imprisonment. The district court[1] ruled that the United States Sentencing Guidelines were not mandatory and sentenced Winters to 240 months' imprisonment. We affirm.

———————

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

## I. *Background*

On January 1, 2003, Winters and his brothers were drinking alcohol and driving through Pine Ridge Village, a neighborhood on the Pine Ridge Indian Reservation. Around dusk, Winters encountered Lucien Janis. Winters, known to be affiliated with the TB gang, and Janis, a member of the Ter. Ter. gang, exchanged unpleasantries. Winters left and went to Louis "Boy" Winters's home to get a gun.

Boy gave Winters a Colt .45 semi-automatic pistol and a loaded magazine. Winters and his brothers continued to drive around Pine Ridge Village consuming alcohol and eventually drove back to the place where Winters and Janis exchanged words. Winters and one of his brothers confronted Janis. Janis said, "Give me the gun, I'll shoot myself," and then Winters shot Janis in the head at close range, killing him instantly. Winters and his brothers then fled the scene back to Boy's residence. Winters gave Boy the Colt .45 and told him that Winters was in trouble and needed to get out of town. Winters was arrested the following day.

A first indictment charged Winters with second-degree murder and use of a firearm in the commission of a crime. In a superseding information, the second-degree murder charge was replaced with a charge of voluntary manslaughter. Winters pleaded guilty to both charges and the court ordered a presentence investigation report ("PSI") to be prepared. The PSI noted that while the judges in the District of South Dakota agreed that *Blakely v. Washington*, 542 U.S. 296 (2004), rendered the Guidelines unconstitutional, the Guideline computation was being provided for use on an advisory basis.

Under the non-guideline statutory sentence, manslaughter carried a possible ten-year maximum sentence and the firearm charge carried a mandatory ten-year sentence to be served consecutively with the manslaughter. Winters faced a non-guideline statutory maximum of twenty years' imprisonment (240 months). The PSI indicated that Winters was subject to a range of 41 to 51 months' imprisonment for

the manslaughter[2] and a mandatory 120 months for the firearm charge. Accordingly, the PSI recommended a Guideline range for Winters between 161 and 171 months. The district court, however, rejected the recommendation to make a downward adjustment resulting in a Guideline range between 177 and 191 months.

The district court, treating the Guidelines as discretionary, sentenced Winters to 240 months' imprisonment—the statutory maximum. In a statement of reasons, the court stated:

> In light of *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004), the District Court ruled the Guidelines unconstitutional in this case. Therefore, the Guidelines are not binding on the Court, but they were taken into consideration. The Court also considered the factors set forth in 18 U.S.C. § 3553(a) in imposing the sentence in this case.

Winters objected to the district court holding the United States Sentencing Guidelines unconstitutional and argued that he should be sentenced under the Guidelines. The district court refused. Winters then filed the instant appeal.

Prior to the submission of this case, the United States Supreme Court issued its opinion in *United States v. Booker*, 125 S. Ct. 738 (2005), extending *Blakely* to the federal guidelines, and, thus, foreclosing Winters's argument on appeal. Nonetheless, because *Booker* also mandated that appellate courts review sentences for reasonableness in light of the factors enunciated in 18 U.S.C. § 3553(a), *Booker*, 125 S. Ct. 764–66 (Breyer, J.), we requested that Winters submit a supplemental brief addressing the reasonableness of his sentence.

---

[2]The PSI gave Winters a three-level downward adjustment for acceptance of responsibility, otherwise, he would have been subject to a range of between 57 and 71 months' imprisonment for voluntary manslaughter.

## II. *Reasonableness*

We start by noting that because the district court did not use the Guidelines in a mandatory fashion, Winters did not suffer a *Booker*-styled Sixth Amendment violation. *See Booker*, 125 S. Ct. at 750 (Stevens, J.) (explaining that there would be no Sixth Amendment violation "if the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts."). Thus, this case comes to the court in a fashion similar to that of Respondent Fanfan in *Booker*'s companion case. With respect to Fanfan*,* the Court stated:

> In respondent Fanfan's case, the District Court held *Blakely* applicable to the Guidelines. It then imposed a sentence that was authorized by the jury's verdict--a sentence lower than the sentence authorized by the Guidelines as written. Thus, Fanfan's sentence does not violate the Sixth Amendment. Nonetheless, the Government (and the defendant should he so choose) may seek resentencing under the system set forth in today's opinions. Hence we vacate the judgment of the District Court and remand the case for further proceedings consistent with this opinion.

*United States v. Booker*, 125 S. Ct. 738, 769 (2005).

> The Court, however, directed appellate courts:

> to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test [for violations of the Sixth Amendment] . . . [and] in cases not involving a Sixth Amendment violation, [to determine] whether resentencing is warranted [after] application of the harmless-error doctrine.

*Booker*, 125 S. Ct. at 769.[3] In this case, the district court went through the analytical sentencing-framework prescribed by *Booker*. Specifically, the district court consulted the Guidelines in an advisory fashion and looked to the factors in 18 U.S.C. § 3553(a). Thus, there was no *Booker* error.

As such, we review Winters's sentence for reasonableness in light of § 3553(a). *See United States v. Killgo*, 397 F.3d 628, 630–31 & n.4 (8th Cir. 2005) (explaining that part of *Booker*'s remedial command requires appellate courts to review the sentence for reasonableness). Accordingly, we must review Winters's sentence with respect to the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for–
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
> > > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of

---

[3]The Court, however, did not apply either the plain-error test or harmless-error test to Booker or Fanfan. Presumably, the Court vacated Fanfan's sentence and remanded the case so that the district court would have the guidance of *Booker* in calculating Fanfan's sentence.

whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).[4]

---

[4]While we are to judge the sentence for reasonableness, district courts are to impose a reasonable sentence. In crafting the reasonableness standard of review for appellate courts, the Supreme Court noted that appellate courts are familiar with the standard as the Federal Sentencing Act has "long required [its] use in important sentencing circumstances – both on review of departures . . . and on review of sentences imposed where there was no applicable Guideline." *Booker*, 125 S. Ct. at

In his original appeal, Winters argued that the district court erred in refusing to grant him an offense-level reduction for acceptance of responsibility. Because § 3353(a)(4), and the mandates of *Booker*, require courts to consult the Guidelines, an erroneous application of the Guidelines will be but one factor in applying the reasonableness standard. We review a district court's denial of an acceptance of responsibility adjustment under U.S.S.G. § 3E1.1 for clear error. *United States v. Patten*, 397 F.3d 1100, 1104–05 (8th Cir. 2005). A district court's factual determination on whether a defendant has demonstrated acceptance of responsibility is entitled to great deference and should be reversed only if it is so clearly erroneous as to be without foundation. *United States v. Arellano*, 291 F.3d 1032, 1034 (8th Cir. 2002).

In the plea agreement, the United States agreed to recommend that Winters demonstrated acceptance of responsibility. In addition, the PSI indicated that Winters

---

766. Previously, our reasonableness standard for departures was judged in three parts:

> First, as a question of law, the court determines whether the circumstances on which the district court relied for departure are sufficiently unusual in kind or degree to warrant departure. Second, as a question of fact, the court determines whether the circumstances justifying departure actually exist. Third, with deference to the district court, the court reviews the reasonableness of the degree of departure under an abuse of discretion standard.

*United States v. Joshua*, 40 F.3d 948, 951 (8th Cir. 1994) (citing *United States v. Sweet*, 985 F.2d 443, 445 (8th Cir.1993)). With respect to the third factor, we have explained that it is the district court, not us, that makes this judgment call of reasonableness. *United States v. Sweet*, 985 F.2d 443, 445 n.2 (8th Cir. 1993). Accordingly, we must give "due regard to the district court's superior feel for the case." *Id*. (internal quotations omitted).

satisfied the § 3E1.1 requirements. At the sentencing hearing, the district court explained that "a plea of guilty is not sufficient to trigger the acceptance of responsibility under the guidelines," and that after examining the file, Winters would not be entitled to an acceptance of responsibility reduction. Indeed "[a] defendant who enters a guilty plea is not entitled to an adjustment under [U.S.S.G. § 3E1.1] as a matter of right." *United States v. Morris*, 139 F.3d 582, 584 (8th Cir. 1998) (brackets in original) (citing U.S.S.G. § 3E1.1, cmt. n.3). The district court, which had the opportunity to observe Winters's demeanor at sentencing, was within its discretion to conclude that he had not accepted responsibility for his offense. *See id*.

Next we turn to the underlying facts to address the remaining portions of § 3553(a). In this case, Winters, while intoxicated, got into an argument with the victim. He then left the scene and retrieved a gun that he used to shoot the victim at close range in the head. Winters then fled the scene, and tried to dispose of the gun.[5] The district court characterized Winters as the "trigger man" and the "hit man." In addition, the court noted that the crime "was a malicious act which was entirely senseless."

Although the district court sentenced Winters outside the Guidelines range, we cannot say that the sentence, when viewed in light of the relevant § 3553(a) factors, is unreasonable. The facts offer nothing, other than Winters's voluntarily diminished capacity, to ameliorate the abject brutality of an execution-style slaying of an unarmed person. The district court aptly described it as malicious and senseless. Furthermore, Winters has admitted to being prone to violence. A twenty-year sentence in this case comports with the considerations in § 3553(a)(2) that the sentence reflect the seriousness of the offense, promote respect for the law, provide

---

[5]Winters returned the gun to Boy, who, in turn, gave it to his wife with instructions to pass it on to a third person, Leon Janis, and get rid of it. Leon gave the gun to a fourth person who subsequently notified the authorities and allowed them to recover the weapon.

just punishment for the offense, afford adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant.

Winters relies heavily on the Congressional statement that a Guidelines sentence is necessary to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3353(a)(6). Winters explains that because he received the maximum statutory sentence, his sentence will be quite different from other persons with no criminal history who commit voluntary manslaughter. However, each case must be judged on its own facts and few cases will present facts like this one. Applying Winters's argument, that the range of reasonableness is essentially co-extensive with the Guidelines range, would effectively render the Guidelines mandatory. We have been directed to review a sentence for reasonableness based on *all* the factors listed in § 3353(a)(6). The Guidelines range is merely one factor. We cannot isolate possible sentencing disparity to the exclusion of the all the other § 3553(a) factors.

For the foregoing reasons, we conclude that Winters's sentence is reasonable and affirm.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. While I agree with the majority's holding that the district court did not commit a Booker error, I disagree strongly with the majority's affirmance of Winters's sentence. My reasons are twofold: First, the district court clearly erred in denying Winters a reduction in his offense level for acceptance of responsibility. Second, in imposing the maximum sentence for voluntary manslaughter, the district court failed to fashion a sentence reflective of the § 3553(a) factors. Instead, at sentencing, the court substituted its own subjective assessment of what sentence should be imposed for the statutory factors. For these two reasons, I would remand for resentencing.

-9-

## I. The Guidelines Issue

In my view, the district court clearly erred in failing to apply United States Sentencing Guidelines section 3E1.1(a), which states that a defendant is entitled to a reduction in his offense level if he "clearly demonstrates acceptance of responsibility for his offense."[6] Our court has held that a defendant's eligibility for this adjustment can be exhibited by outward manifestations of acceptance of responsibility. United States v. Wivell, 893 F.2d 156, 158 (8th Cir. 1990).

Here, Winters met the relevant criteria to establish his acceptance of responsibility. This fact was recognized by both the government and the pretrial services officer, who recommended that Winters receive a three-level reduction for acceptance of responsibility and outlined their reasoning for this recommendation to the court. The district court ignored these recommendations and the fact that Winters had given a full account of his actions. Instead, it simply stated, "[t]he Court in examining this file concludes that in the Court's discretion, the defendant would not be entitled to acceptance of responsibility. A plea of guilty is not sufficient to trigger the acceptance of responsibility under the guidelines." Sent. Tr. at 3. As a result, Winters's guidelines range increased from 41 to 51 months to 57 to 71 months.

---

[6]In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

> voluntary withdrawal from criminal conduct, or association with those involved in such conduct; voluntary restitution payment made prior to a guilty plea; admissions to authorities regarding the offense and related conduct; prompt surrender to authorities after committing the offense; assisting authorities in the recovery of relevant fruits and instrumentalities; and the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

USSG. § 3E1.1, comment. (n.1).

I certainly agree with the district court that a simple plea of guilty does not entitle a defendant to a three-level reduction for acceptance of responsibility, but as this record makes clear, Winters did much more than that. He cooperated fully with the government's investigation. He assisted in the prosecution of another offense. He notified the government of his intent to plead guilty in a timely fashion. Most importantly, Winters's statement at sentencing demonstrates his sincere acknowledgment of and contrition for his criminal conduct:

> I wanted to make this part of the record of the total regret and remorse I have for what has brought me to this courtroom today. If I could turn back the hands of time, I would take the knowledge and feelings and understanding I have today and believe I would have made better choices concerning this matter. Key words here are "would have, should have, and could have." And this causes me to lie awake at night constantly contemplating on my actions; has caused me many sleepless nights. I am sorry for my past criminal history; I should say the lack of criminal history, that I did not react and respond like I did on a normal basis. And what has happened, believe it or not, is punishment in itself. I am here today to let the Court know I am accepting full responsibility for my actions. I would like to take this time to pray that the Court take mercy on me and show forgiveness that God has shown me. I hope the Court recognizes what happened is a horrible, horrible, horrible mistake and unfortunately leave these loved ones as well as for mine. My mistake is irreversible. I have no restitution or punishment can make up for life here. It is life, although there are people who can give me mercy, I want to let them know that I am very sincere about the remorsefulness and in fact, my remorsefulness made me a spiritual person that will insure I will never commit a crime like this ever again. Showing forgiveness will give me a chance to prosper again, therefore give me a chance to make up all I can to the victim's loved ones as well as be a productive citizen of the United States.
>
> Sorry for what I did. . . . Hope you find it in your hearts to forgive me, man. I know you guys hate me, man, but . . . I not only hurt

you and your family, I hurt my family, too.  Forgive me for what I have done.

Sent. Tr. 18-19.

Given Winters's total cooperation and his "outward manifestations of acceptance of responsibility," Wivell, 893 F.2d at 158, he was entitled to a reduction for acceptance of responsibility.  The district court's failure to adjust his guidelines range accordingly was clear error.

## II.  Review of the Sentence in Light of 18 U.S.C. § 3553(a)

I would also remand for a second reason:  the district court imposed an unreasonable sentence in light of the § 3553(a) factors.[7]  United States v. Booker,  S. Ct. 738, 767 (2005),  mandated that a district court in sentencing must consider not only the guidelines, but the other § 3553(a) factors.  Id. Our task is to review the district court's sentence for reasonableness.

The sentencing transcript reveals that the district court did not mention the § 3553(a) factors during the sentencing hearing.[8]  The court rather gave the following

---

[7]The factors include: the nature and circumstances of the offense and the history and characteristics of the defendant;  the need for the sentence imposed; the kinds of sentences available;  the kinds of sentence and the sentencing range established for the offense; any pertinent policy statement relevant to the offense.  18 U.S.C. § 3553(a) (citations omitted); see also United States v. Killgo, 397 F.3d 628, 630 (8th Cir. 2005) (noting that following Booker, we review the imposition of sentences for unreasonableness, "judging it with regard to the factors in 18 U.S.C. § 3553(a)"); United States v. Yahnke, 395 F.3d 823, 824 (8th Cir. 2005) (same).

[8]In the district court's written Statement of Reasons, it stated that it "also considered the factors set forth in 18 U.S.C. § 3553(a) in imposing the sentence in this case," but provided no further elucidation of those factors.

two reasons for imposing the ten-year sentence for the manslaughter conviction, in addition to the mandatory consecutive ten years for using a gun in committing the offense: First, the court hypothesized that the defendant would be faced with the possibility of a lifetime sentence under South Dakota law, and in this case the defendant should not receive a lesser sentence simply because he was being prosecuted in federal court rather than state court. This is not a valid § 3553(a) concern; a state sentence is not available for this federal crime. Federal sentencing judges may not attempt to equalize federal sentences to their state criminal analogs. This approach would result in significant national disparity in sentences. Moreover, there is no evidence in this record, nor are there any publicly available studies or statistics, indicating that a first offender convicted of manslaughter with a firearm in South Dakota would serve more than the thirteen to fifteen-year sentence the defendant would have faced with a guidelines sentence.[9] Second, as is clear from the sentencing transcript, the district judge was upset that the prosecutor accepted a plea for manslaughter, rather than trying Winters for first- or second-degree murder. At sentencing, the prosecutor strongly disagreed with the district court's assessment of its charging decision:

> Though I have not practiced as long as Your Honor, we fully investigated this matter. We conducted dozens of interviews. As far as we are concerned, no one knows this case as well as we do. We are second guessed, as you often know, following charging decisions sometimes for years.

The prosecutor repeatedly reiterated the conviction was for the charge that the evidence supported. Sent. Tr. 12-14.

---

[9]Winters faced a ten-year consecutive sentence for this firearms conviction in addition to his voluntary manslaughter sentence.

In short, there is nothing about Winters or the circumstances of this case to justify the district court's dramatic variance from the guidelines. Until this offense, Winters persevered in spite of the obstacles Pine Ridge presents to its residents.[10] He found himself at the age of twenty-two with no criminal record, a high school diploma, and a member of his tribe's spiritual community. His crime was inexcusable, and resulted in the needless death of a fellow community member. But Winters himself recognized the gravity of his actions as his allocution ably demonstrated. It is not the duty nor the province of our sentencing courts to attempt an ad hoc equalization between perceived state and federal sentencing disparities, leaving an individual like Winters to suffer the burden of such an exercise. With an affirmance of his sentence, Winters will serve a sentence double that of fellow inmates who have committed similar crimes. This sentence is unjustified and unreasonable.

---

[10]Though the deplorable conditions of Pine Ridge Indian Reservation cannot serve as an excuse for Winters's actions, it is important to note that the Pine Ridge Indian Reservation is often considered one of the poorest places in America. Infants are twice as likely to die from sickness or injury than other infants living across the United States. The life expectancy for men at Pine Ridge is only 56.5 years, a figure that rivals that of Central African nations, and is the lowest in the northern hemisphere, with the exception of Haiti. More than one-third of the homes on Pine Ridge have no indoor plumbing or electricity, and they often hold several families living among two to three rooms. Edward B. Gehres III, Note, Visions of the Ghost Dance: Native American Empowerment and the Neo-Colonial Impulse, 17 J.L. & POL. 135, 140-41(2001); Pine Ridge Indian Reservation, South Dakota: Community Mini-Plan, South Dakota State University, Rural Community Planning, Sociology 640 (December 16, 2003, available at http://sdrurallife.sdstate.edu/Rural%20Planning%20&%20Development/ Pine%20Ridge.pdf.

## CONCLUSION

If Winters were to be sentenced pursuant to this dissent, he would serve more than thirteen years in federal prison. That sentence is adequate to fulfill the §3553(a) sentencing goals. This district court ignored Winters's sincere acceptance of responsibility, and went on to impose a sentence far beyond what the guidelines called for, providing our court with no justification for its decision. In my view, this was an error. Accordingly, I would reverse and remand to the district court for resentencing consistent with this dissent.

_____