# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2497

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Howard Eugene Liner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 2005
Filed: January 31, 2006

_____

Before WOLLMAN, LAY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Howard Eugene Liner was convicted of one count of making a false statement to a federal officer, a violation of 18 U.S.C. § 1001; seventeen counts of wire fraud, violations of 18 U.S.C. § 1343; and one count of money laundering, a violation of 18 U.S.C. § 1957. The district court[1] sentenced Liner to 135 months' imprisonment and ordered Liner to pay $1,625,666.67 in restitution. On appeal, Liner challenges certain trial court rulings, the sufficiency of the evidence, and the propriety of the restitution award. We affirm.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## I.

In 1999, Liner devised a wire fraud scheme involving several purported investment trading programs. He held informational meetings in Minnesota to solicit investments from his wife's relatives and his father-in-law's friends. To induce attendees to invest, he claimed that he had connections to high-ranking military and government officials and access to exclusive investment opportunities. Liner assured potential investors that federal agencies supervised these programs. Liner explained that their money would fund humanitarian projects, while earning them a high rate of return. Because these trading programs were secret, he required potential investors to sign nonsolicitation agreements. Relying on these representations, investors wired more than $1.6 million to Liner's Bank of America account in Texas.

Liner told the investors that the first trade had been successful and made other assurances, but he never invested the money. Instead, he repaid previously defrauded investors, made certain lulling payments, bought vehicles, remodeled his home, and paid for his daughter's wedding. When investors became suspicious and demanded proof that the trading programs were legitimate, Liner reassured them. When that failed, he stalled them. Liner told them that the government had frozen the accounts, that the funds had been stolen, that Liner was the victim of a large-scale fraud, that Liner was suspended from participating in the programs, and that a flood in Texas had destroyed bank records.

On October 21, 2002, Liner, aware of an investigation by the Federal Bureau of Investigation in Minnesota, contacted an FBI agent. During this phone call, Liner admitted that he had not invested the money but instead had swapped the investors' funds with personal funds held in a Swiss bank account. Further, he claimed that another person had absconded with the money and that he (Liner) had had to sue for the funds. Liner claimed that he had already received a judgment in England. Months later, Liner admitted that he had no funds in Switzerland.

On appeal, Liner challenges certain trial court rulings, the sufficiency of the evidence, and the propriety of the restitution award.

## II.

We first address the district court's denial of Liner's motion for transmittal of letters rogatory to depose a foreign citizen. We review this denial for abuse of discretion. United States v. Adcock, 558 F.2d 397, 406 (8th Cir. 1977); United States v. Kelley, 36 F.3d 1118, 1124 (D.C. Cir. 1994).

Liner contends that the district court erred when it denied his motion for letters rogatory to depose Gabriel MacEnroe, a Swiss citizen who purportedly ran an investment program. In exceptional circumstances, a district court may issue letters rogatory to depose a witness in a criminal case. Fed. R. Crim. P. 15(a); Fed. R. Civ. P. 28(b)(3). To establish exceptional circumstances, the moving party must show the witness's unavailability and the materiality of the witness's testimony. See Adcock, 558 F.2d at 406; accord Kelley, 36 F.3d at 1124. MacEnroe's unavailability is not disputed. Liner has failed to show, however, that MacEnroe's testimony would be material. In his motion, Liner argued that MacEnroe's testimony might show that Liner invested the victims' money in a legitimate investment program in Switzerland, but Liner offered no evidence to support this claim. Accordingly, we conclude that the district court did not abuse its discretion in denying Liner's motion.

## III.

Next, Liner argues that the district court erred in admitting the expert testimony of Herbert Biern, Senior Associate Director at the Federal Reserve Board, contending that Biern testified to the ultimate issue to be decided by the jury. We review the district court's evidentiary ruling for abuse of discretion. United States v. Walker, 393 F.3d 842, 848 (8th Cir. 2005). Biern testified that the prospectus Liner provided to investors contained some of the twelve indices of fraudulent high-yield investment

schemes. Biern expressed no opinion as to whether Liner had the requisite *mens rea* to commit wire fraud or whether Liner's program was, in fact, fraudulent.

Rule 704(b) prohibits an expert from rendering an opinion as to whether the defendant had the mental state constituting an element of the crime charged. "Testimony that, when combined with other evidence, might imply or otherwise cause a jury to infer this ultimate conclusion, however, is permitted under the rule." United States v. Vesey, 338 F.3d 913, 916 (8th Cir. 2003). Here, although Biern implied that Liner's program was fraudulent, he did not directly address Liner's intent to defraud. We conclude that the district court did not abuse its discretion in admitting Biern's testimony. In any event, any error in admitting Biern's testimony was harmless in light of the strength of the government's other evidence against Liner.

**IV.**

Liner challenges the sufficiency of the evidence with respect to all counts on which he was convicted. We review *de novo* the sufficiency of the evidence and view the evidence in a light most favorable to the verdict, giving it the benefit of all reasonable inferences. United States v. Hill, 410 F.3d 468, 471 (8th Cir. 2005). We uphold the verdict if a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id.

**A.**

Liner first argues that the evidence was insufficient to support his conviction on Count I, making false statements to a federal officer. Liner contends that he did not make the statement alleged in the indictment, and, even if he did, the statement was neither false nor material. Title 18, Section 1001, prohibits making "any materially false, fictitious or fraudulent statement or representation" regarding any matter within the jurisdiction of any department or agency of the United States. 18 U.S.C. § 1001(a). To sustain a conviction under this section, the government must

prove that the defendant's false statements were material to the governmental inquiry. U.S. v. Robertson, 324 F.3d 1028, 1030 (8th Cir. 2003).

The indictment alleged that Liner told an FBI agent that "another person had absconded with all the money invested by Minnesota investors." At trial, the agent testified that Liner made the following statements: (1) Christopher Herron had taken the investment money and Liner had to pursue him through the courts in order to get a remedy in England; (2) Liner used the victims' funds for personal expenses; (3) Liner swapped the victims' money with other money he had invested in Switzerland, crediting the victims with other monies under Liner's possession and control; and (4) the account in Switzerland was under the name "Gabriel MacEnroe" because only Swiss citizens could maintain Swiss accounts. Liner later admitted to the agent that he had no funds in Switzerland. From this testimony, a jury could reasonably find that Liner made the statement alleged in the indictment and that the statement was false and material to the government's investigation. Thus, the evidence was sufficient to support Liner's conviction on Count I.

**B.**

Liner next contends that the evidence was insufficient to support his conviction on seventeen counts of wire fraud and one count of money laundering. Specifically, Liner argues that he lacked the requisite intent. Liner's wire fraud conviction required that the government prove beyond a reasonable doubt that he intended to defraud. United States v. Frost, 321 F.3d 738, 741 (8th Cir. 2003). On the money laundering count, the government was required to prove that Liner knowingly engaged or attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000. United States v. Pizano, 421 F.3d 707, 722 (8th Cir. 2005). We conclude that the evidence overwhelmingly supported the jury's verdict. For example, one victim testified that Liner promised a fifty-percent return on his investment each month, that there was little or no risk, and that Alan Greenspan, Chairman of the Federal Reserve Board, supervised the programs. Based on these and other

assurances, the victim wired $290,000 to Liner's bank account, but the victim received only one payment of $50,000. The victim explained to the jury, as best he could, the mechanics of Liner's trading program. Further, the jury heard testimony regarding Liner's lavish expenditures during the relevant time period. Having considered this and other evidence, a jury could reasonably conclude that Liner intended to defraud the victims and that he knowingly engaged in money laundering.

## V.

Liner challenges the sentence imposed by the district court. He contends that Blakely v. Washington, 542 U.S. 296 (2005), and United States v. Booker, 543 U.S. 220 (2004), render his sentence invalid. Because Liner raises this issue for the first time on appeal, we review for plain error, and we remand for resentencing only if Liner establishes that there was error that was plain and that affected his substantial rights. United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc). To show that the sentence affected his substantial rights, Liner must show that the district court likely would have granted a lesser sentence had the district court not treated the Sentencing Guidelines as mandatory. Pirani, 406 F.3d at 552.

In this case, the district court's sentencing enhancements were plainly erroneous in light of Booker because they were imposed on the basis of judge-found facts in a mandatory guidelines regime. Pirani, 406 F.3d at 550. This error did not affect Liner's substantial rights, however, for the record reflects that the sentence likely would have been the same had the district court treated the guidelines as advisory. The district court denied the government's request for an upward departure and sentenced Liner at the top of the guidelines range. The district court expressed its satisfaction with the sentence:

> I think 135 months, considering your age, is an appropriate sentence
> under the circumstances. I do find that this sentence of 135 months

-6-

comports with the statutory objectives for sentencing as expressed in 18 U.S.C. § 3553. You've fooled a lot of people for a long time, but this sentence is entirely appropriate, and the jury spoke loudly and clearly in your case.

Sentencing Tr. at 99. Accordingly, we conclude that Liner is not entitled to resentencing.

## VI.

Finally, Liner argues that the district court erred in awarding $155,000 in restitution to victims not specified in the indictment. We review the district court's restitution order for abuse of discretion and review *de novo* its application of the Mandatory Victims Restitution Act. United States v. Ross, 210 F.3d 916, 924 (8th Cir. 2000). So long as the indictment details a broad scheme encompassing transactions beyond those alleged in the counts of conviction, the district court may order restitution to victims who suffered from defendant's criminal activity beyond what was described with particularity in the indictment. United States v. Bush, 252 F.3d 959, 963 (8th Cir. 2001); see 18 U.S.C. 3663(a)(1)(A). Accordingly, we look to the indictment to determine whether the award constitutes a permissible restitution order.

Liner's indictment alleged a scheme to defraud that encompassed victims and losses beyond those specified in Counts 2 through 18. Liner's entire scheme, therefore, brings the unspecified victim's losses within the outer limits of the restitution order, and thus the district court properly afforded those victims relief.

The sentence and restitution order are affirmed.

_____