# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

04-2119

_____

United States of America,          *
                                   *
           Plaintiff - Appellee,   *
                                   *   Appeal from the United States
     v.                            *   District Court for the Western
                                   *   District of Missouri.
Jesus Jimenez-Gutierrez,           *
                                   *
           Defendant - Appellant.  *

_____

Submitted: January 11, 2005
Filed: October 13, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jesus Jimenez-Gutierrez pled guilty to conspiring to distribute fifty grams or more of a mixture or substance containing methamphetamine. At sentencing, he received a two-level enhancement due to his role in the offense as a manager or supervisor. The resultant Guidelines range was 188 to 235 months. The district court sentenced him at the bottom of this range, 188 months.

On appeal, Mr. Jimenez-Gutierrez alleges error in the district court's application of the two-level enhancement. He also alleges error under Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct 738 (2005). "We review the district court's decision to assess a sentencing enhancement based upon a defendant's role in the offense for clear error." United States v. Johnson, 278 F.3d 749, 752 (8th Cir. 2002). Regarding the Blakely/Booker issue, because Mr. Jimenez-Gutierrez raised this issue for the first time on appeal, we review only for plain error. United States v. Pirani, 406 F.3d 543 (8th Cir. 2005).

For a two-level managerial role enhancement to apply, it is only necessary that the defendant supervise or manage one other participant. See U.S.S.G. § 3B1.1 cmt. 2 ("To qualify for a [U.S.S.G. § 3B1.1(c)] adjustment . . . the defendant must have been the . . . manager or supervisor of one or more other participants.") The record in this case demonstrates, at a minimum, that Mr. Jimenez-Gutierrez was a supervisor/contact person at the destination point for a drug courier on an Arizona-to-Minnesota drug shipment. When officers stopped the courier for speeding in Missouri and discovered drugs, the courier agreed to cooperate. Her statements implicated Mr. Jimenez as a supervisor. Also, Mr. Jimenez-Gutierrez's own actions showed that he played a supervisory role. The courier cooperated by calling Mr. Jimenez-Gutierrez to ask for instructions and help. She told Mr. Jimenez-Gutierrez that her van had broken down. Mr. Jimenez-Gutierrez then traveled from Minnesota to Missouri, receiving numerous calls from the courier during his trip. When he arrived at the courier's van in Missouri, officers arrested him. At the time of his arrest, he had a plane ticket and travel itinerary for the courier as well as the cell phone she had called. In addition, he had wired the courier $300 prior to her trip, as demonstrated by a receipt found in the courier's van. This evidence is sufficient to support the district court's finding that Mr. Jimenez-Gutierrez supervised the courier.

Regarding the Blakely/Booker issue, the district court understandably treated the Guidelines as mandatory at Mr. Jimenez-Gutierrez's May 2004 sentencing. We

now know that this was error. In <u>Pirani</u>, 406 F.3d at 552, we stated that a <u>Blakely</u>/<u>Booker</u> error affects a defendant's substantial rights and may be plain error if the defendant can show a reasonable probability that the district court would have granted a more favorable sentence had it treated the Guidelines as advisory.

In this case, the district court sentenced Mr. Jimenez-Gutierrez at the bottom of the Guidelines range. Also, the district court made repeated statements at sentencing to explain its dissatisfaction with Mr. Jimenez-Gutierrez's Guidelines sentence. The district court was primarily dissatisfied with the discrepancy between the sentence imposed upon the courier, twenty-four months, and the minimum sentence available for Mr. Jimenez-Gutierrez, 188 months. Counsel for Mr. Jimenez-Gutierrez raised the issue of the discrepancy, and the district court asked the government how it justified such a discrepancy. The government stated that the courier had not brought drugs into the United States. In response to this comment, the district court stated, "There's no evidence that he [Mr. Jimenez-Gutierrez] brought drugs into the country. There's evidence that he arranged this transportation of these drugs." The government then claimed that Mr. Jimenez-Gutierrez had arranged multiple other instances involving the transportation of drugs. The district court responded, "That is not before the court."

The district court later stated, "And the question is, that is a large discrepancy for people who were basically involved in exactly the same conspiracy with exactly the same drugs with exactly the same purity with slightly different roles." The district court then noted that the long sentence for Mr. Jimenez-Gutierrez and the downward departure for the courier resulted in "a very generous reward to her or an unduly punitive award to him." Next, the district court stated, "[i]t is hard, though, to argue that it in any way promotes the idea of uniformity in sentencing, which is what the [G]uidelines were intended to achieve. . . . It does not promote uniformity. There are wildly varying levels of departures for the courts, and for every [United States Attorney] in the country." The discussion continued and the district court continued

to express dissatisfaction with the lack of discretion available in sentencing. The district court concluded:

> I wonder what would happen if the judges routinely just said no downward departures, period. You can ask for them, but the judges say no. It would be interesting to see what would happen under those circumstances. Given the punitiveness of the [G]uidelines, sometimes it's very difficult. In an attempt to, in fact, do justice, we find ourselves in a Catch-22. Regardless of what we do, there is an element of injustice in it, and I think this case is a good demonstration of the element of injustice in it. Not that Mr. Jimenez didn't get what he deserved, but Ms. Salinas probably didn't get what she deserved through the generosity of the government.
>
> . . .
>
> I have given the defendant the low end of the [G]uideline, given the very punitive nature of the [G]uidelines. It is more than sufficient to deter the defendant and those like him from entering the United States to engage in drug conduct, drug conspiracy conduct.

We held in <u>Pirani</u> that a sentence at the bottom of the Guidelines range, standing alone, is insufficient to demonstrate a reasonable probability that the district court would have imposed a more favorable sentence under an advisory regime. <u>Pirani</u>, 406 F.3d at 553. We also stated that a district court's expression of a general dissatisfaction with the Guidelines fails to demonstrate the required reasonable probability of a lesser sentence. <u>Id.</u> at 553 n.6. In contrast, a district court's statements specific to a sentence actually imposed are relevant to the prejudice inquiry. <u>Id.</u>; <u>United States v. Rodriguez-Ceballos</u>, 407 F.3d 937, 941 (8th Cir. 2005).

Applying these rules, we see that the record in this case is mixed. The district court spoke generally about the Guidelines and specifically about the sentence. Speaking generally, the district court stated that it believed a system that allowed for such large discrepancies was unjust. Speaking about the sentence actually imposed, the district court emphasized that the present case was an example of what it believed

-4-

to be unjust. The district court, in fact, sentenced Mr. Jimenez-Gutierrez at the bottom of the Guidelines range and expressly stated that it believed the Guidelines to be "very punitive," that the sentence imposed on Mr. Jimenez-Gutierrez might be an "unduly punitive award to him," and that the sentence it felt bound to impose was "more than sufficient to deter the defendant." On the other hand, the district court stated, "not that Mr. Jimenez didn't get what he deserved."

Taken together, we believe that the bottom-of-the-range sentence and the district court's statements are sufficient to show a reasonable probability that the district court would have imposed a lesser sentence under an advisory Guidelines regime. In this regard, we note that the plain error standard for relief expressed in United States v. Olano, 507 U.S. 725, 731 (1993), and applied in Pirani is difficult but not impossible for defendants to satisfy. A reasonable probability does not mean certainty. In fact, it does not even equate to proof by a preponderance of the evidence. See United States v. Dominguez Benitez, 124 S.Ct. 2333, 2340 n.9 (2004) (describing the plain error standard and noting that, "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different."); see also, Kyles v. Whitley, 514 U.S. 419, 434 (1995) (stating that, the "touchstone . . . is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict."). Because the reasonable probability standard is not the same as a preponderance of the evidence standard, we need not determine whether it was more likely that the district court wanted to impose a lesser sentence on Mr. Jimenez Gutierrez or a greater sentence on the courier. The district court's language in this case leaves open the reasonable probability that either or both outcomes were desired. The record in this case is sufficient for Mr. Jimenez-Gutierrez to make the requisite showing under Pirani.

Because there is a reasonable probability that Mr. Jimenez-Gutierrez would have received a lesser sentence under an advisory regime, we must determine whether the fourth Olano factor is satisfied, i.e., whether the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732. We believe that this final factor is satisfied by the fact that the sentence Mr. Jimenez-Gutierrez received may be much longer than what the district court would have imposed under an advisory Guidelines regime. Rodriguez-Ceballos, 407 F.3d at 941.

We affirm as to the two-level enhancement but vacate the sentence and remand for re-sentencing in light of Booker.

COLLOTON, Circuit Judge, concurring.

As the court recounts, the record in this case shows that the district court granted a substantial sentence reduction to Linda Salinas, based on her provision of substantial assistance in the investigation and prosecution of others, and then expressed frustration that Jesus Jimenez-Gutierrez, who provided no such assistance, was subject to a much lengthier term of imprisonment under the then-mandatory sentencing guidelines. It seems to me that there is a substantial question whether a district court may, in essence, create a "sentence disparity" by granting a reduction under the now-advisory guidelines to one defendant based on the provision of substantial assistance, and then "reasonably," within the meaning of *United States v. Booker*, 125 S. Ct. 738 (2005), vary from the advisory guidelines based solely on this "disparity" when sentencing another defendant who declined an opportunity to provide such assistance. Congress clearly thought it appropriate that defendants who provide substantial assistance should receive lower sentences than would otherwise be imposed, *see* 28 U.S.C. § 994(n); 18 U.S.C. § 3553(e), so it is difficult to conclude that Congress at the same time believed that such reductions in sentence would cause "unwarranted sentence disparities" that need to be avoided. *See* 18 U.S.C. § 3553(a)(6). But given the "mixed" record, I accept the court's conclusion that there

is a "reasonable probability" that the district court, if aware of *Booker*, would have preferred to reduce Jimenez-Gutierrez's sentence on the basis of a perceived "sentence disparity." And our precedent holds that the fourth prong of plain error analysis does not entail consideration of whether the proffered reason for a more favorable sentence would be reasonable with regard to 18 U.S.C. § 3553(a). *Cf. United States v. Betterton*, 417 F.3d 826, 833-36 (8th Cir. 2005) (Hansen, J., concurring). Therefore, I concur in the decision to remand this case for resentencing, although the ultimate result may be imposition of the same sentence.

————————————————