# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

06-1566

_____

United States of America,         *
                                      *

         Plaintiff - Appellant,     *

                                      *   Appeal from the United States

     v.                            *   District Court for the Western

                                      *   District of Missouri.

Jesus Jimenez-Gutierrez,       *

                                      *

         Defendant - Appellee.     *

_____

Submitted: January 10, 2007

Filed: June 29, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Jesus Jimenez-Gutierrez ("Defendant") pleaded guilty to conspiring to distribute fifty grams or more of a mixture or substance containing methamphetamine. The district court sentenced him at the bottom of the then-mandatory Guidelines sentencing range, 188 months in prison. After the Supreme Court issued its opinions in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005), we affirmed the district court as to its application of a two-level, role-in-the-offense enhancement in the calculation of the Guidelines range, but we vacated the resultant sentence and remanded for resentencing in light of <u>Booker</u> because we

found plain error under our test as articulated in United States v. Pirani, 406 F.3d 543, 552-53 (8th Cir. 2005). United States v. Jimenez-Gutierrez, 425 F.3d 1123, 1126-27 (8th Cir. 2005).

On remand, the district court[1] exercised its discretion and varied below the bottom of the advisory Guidelines range, sentencing the defendant to ninety-six months' imprisonment. On appeal, the government argues the sentence is unreasonable. We affirm.

**BACKGROUND**

The facts of the underlying offense and procedural history are set forth, in part, in our earlier opinion. Id. at 1124-26. We summarize those facts here and describe in detail the proceedings that followed our remand.

Officers stopped a van in Missouri and discovered approximately 1.4 kilograms of high purity methamphetamine and three kilograms of cocaine. Officers received cooperation from the driver who admitted that she was transporting the drugs from Arizona to Minnesota. At an officer's request, she placed phone calls to her contacts within the conspiracy at the destination (Minnesota) side of her route. One of the contacts was Defendant. She told her contacts the van was not working and she needed them to travel to Missouri. When Defendant and another man arrived in Missouri and inspected the van, officers arrested them. Defendant was indicted for conspiring to distribute in excess of fifty grams of methamphetamine, a crime that

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

carries a mandatory five-year minimum sentence.[2] Defendant pleaded guilty to the indictment for conspiring to distribute in excess of fifty grams of methamphetamine.

A presentence investigation report (PSR), prepared prior to Defendant's initial sentencing, suggested that Defendant had four criminal history points and should be sentenced as having a category III criminal history. Two of the suggested points came under U.S.S.G. § 4A1.1(b) for a drug offense in the state of California that resulted in a suspended imposition of sentence, three years' probation, and a special condition that Defendant serve 120 days in custody. Section 4A1.1(b) assesses two criminal history points for a prior conviction resulting in a sentence of greater than sixty days' imprisonment. Defendant only actually served fifty-seven days in custody, however, because he was deported before completing his term of custody. The district court determined at Defendant's initial sentencing that it was necessary to assess the two criminal history points for the California drug offense. The remaining two suggested points came from U.S.S.G. § 4A1.1(d) for committing the present offense while on probation. The district court refused to apply these second two points because deportation had prevented Defendant from completing his original term of probation. With only two points actually counted, the district court placed Defendant in criminal history category II. The government did not challenge these criminal history calculations in the first appeal.

Defendant's base offense level was thirty-six due to the quantity of methamphetamine and cocaine found in the conspirators' van. Defendant received a two-level enhancement for his role in the offense, since he controlled or supervised the driver of the van. He also received a three-level reduction for acceptance of

_____

[2]The government notes in its brief that it committed an error in the indictment, which was supposed to read 500 grams of methamphetamine instead of fifty grams. The government states that it attempted to amend the indictment to read 500 grams, which would have carried a ten-year mandatory minimum, but the district court denied leave to amend.

-3-

responsibility. This resulted in an overall offense level of thirty-five, a category II criminal history, and an advisory Guidelines sentencing range of 188-235 months. As noted above, the district court initially imposed a sentence of 188 months' imprisonment. Defendant appealed the two-level enhancement for his role in the offense, and we affirmed. Id. at 1124-25.

We then found plain error under Booker. In reaching that finding, we noted the district court's expression of dissatisfaction with large discrepancies between Defendant's original sentence and the sentences received by his co-conspirators. Jimenez-Gutierrez, 425 F.3d at 1125. One co-conspirator who appeared to have been doing little more than riding along in the van received a sentence of probation following a pre-Booker downward departure from a Guidelines range of thirty-seven to forty-six months' imprisonment. Another co-conspirator, the driver of the van who called Defendant to Missouri and who, according to the AUSA handling the case, also provided a good deal of additional assistance to prosecutors, received a sentence of twenty-four months. This twenty-four-month sentence was a downward departure under U.S.S.G. § 5K1.1 from a Guidelines range of 168-210 months' imprisonment.

On remand, the district court held a second sentencing hearing, considered arguments from the parties, and used the previously approved Guidelines range of 188-235 months as the advisory range. The court then granted a post-Booker variance under 18 U.S.C. § 3553(a) to impose an overall sentence of ninety-six months. At the second sentencing hearing, the parties argued about the issue of sentencing disparity and the propriety of relying on the co-conspirators' sentences, given the differences between the co-conspirators' roles and Defendant's role and given the distinguishing fact of substantial assistance from one of the co-conspirators. Ultimately, the court did not accept Defendant's invitation to base its sentencing decision only on potential sentencing disparities between Defendant and his convicted co-conspirators. Instead,

the court expressed concern that Defendant's advisory Guidelines range was too high to permit differentiation between Defendant and more culpable, unindicted co-conspirators.

The court characterized Defendant's role in the offense as greater than that of the driver who provided substantial assistance and greater than the passenger in the van, but less than that of manufacturers, importers who brought drugs into the country, or other persons higher up the conspiracy's chain of command. The court viewed Defendant as a mid-level conspirator responsible for overseeing a mule in the transportation of a shipment of drugs. The court described Defendant's advisory Guidelines range as too high to permit adequate differentiation between Defendant, as a mid-level conspirator, and higher-level conspirators who clearly had to exist in the particular conspiracy at issue. As a result, the court divided the bottom-of-the-range figure (188 months) approximately into thirds and determined that Defendant's role was not sufficient to place him in the top third of culpability for members of the conspiracy, such that a sixty-month variance should be applied to differentiate between Defendant and those unidentified persons higher-up in the conspiracy.

Regarding the prior California drug offense that had resulted in two criminal history points, the court noted that Defendant technically was given a suspended sentence with 120 days' custody and three years' probation. This was more than the sixty days' imprisonment required under U.S.S.G. § 4A1.1(b) for the two criminal history points, but Defendant only served fifty-seven days in confinement. The court stated that the Guidelines did not adequately account for the fact that Defendant only served a fifty-seven day term. The court also stated that the Guidelines were too mechanical in this regard when applied to Defendant's case, and the state judge involved with sentencing for the prior offense had a better view of the facts of the prior crime. As a result, the court stated that if Defendant had received one less criminal history point, he would have been treated as though he had a category I criminal history and would have faced a lower advisory range of 168-210 months. The court concluded that a twenty-month variance should be granted based on the

Guidelines' overly mechanical treatment of Defendant's particular criminal history. It is clear from the court's discussion of this issue that this twenty-month portion of the variance was, in effect, a variance based on the sentencing court's view that two criminal history points overstated Defendant's actual criminal history.

The court also listed a number of practical considerations. The court stated that Defendant was an illegal alien and that the sentence imposed was subject to Defendant's agreement not to fight removal post-imprisonment. The court also stated that eight years' imprisonment was sufficient to provide general deterrence to others and to specifically deter Defendant by giving him a "wake-up call." The court also found that a longer sentence would simply impose a cost on the United States of housing Defendant prior to deportation without providing additional deterrent value to Defendant or to criminals in general. The court noted that the statutory minimum sentence was sixty months' imprisonment and that the resultant sentence of ninety-six months—three years above the statutory minimum—was sufficiently above the statutory minimum to reflect the seriousness of the offense.

## DISCUSSION

The overall variance was ninety-two months or approximately 49% below the bottom of the advisory Guidelines range. This variance, whether measured in absolute terms or as a percentage, is a substantial variance and is in the range of variances we have characterized as extraordinary. See, e.g., United States v. Meyer, 452 F.3d 998, 1001 (8th Cir. 2006) (stating that a ninety month, 50% upward variance was extraordinary).

Under the framework set forth in United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005), our review for reasonableness is akin to our traditional review for abuse of discretion. In determining whether there has been an abuse of discretion, we look at whether the sentencing court relied on improper factors, failed to consider

relevant factors, or relied only on proper factors but demonstrated a clear error of judgment in the weighing of those factors.  Id.  Here, it does not appear that the district court considered any improper factors or failed to consider relevant factors. Defendant's criminal history, his role in the conspiracy, the need for general deterrence, the need for specific deterrence, Defendant's acceptance of responsibility, and Defendant's agreement not to contest removal are all relevant and proper factors under 18 U.S.C. § 3553(a).

The government argues that it was error for the district court to measure the overall sentence with reference to the statutory minimum of sixty months because (1) the sentence should be measured with reference to the advisory Guidelines range, and (2) the statutory minimum sentence would have been ten years but for an inadvertent error in the indictment.  See note 2, *supra*.  We believe this argument is misplaced for two reasons.  First, it mischaracterizes the district court's sentencing statements, and second, it suggests a sentencing court is bound by a statutory minimum applicable to an uncharged crime.

Regarding the sentencing statements, the district court clearly measured the overall sentence with reference to the advisory Guidelines range *and* with reference to the statutory mandatory minimum of sixty months.  The district court explained the extent of its variance starting with the advisory Guidelines range and listed specific rationales for different portions of the overall variance.  To suggest otherwise ignores the bulk of the district court's statements.

Regarding the ten-year mandatory minimum for the uncharged crime, the government's argument ignores the fact that when the parties entered the plea agreement both parties were clearly aware that the ten-year mandatory minimum was off the table.  The transcript of the change of plea hearing shows that the government, Defendant's counsel, and Defendant discussed with the court the issue of unidentified indictment irregularities.  Defendant waived any objections he might have had

regarding these irregularities, and the government's attorney stated, "I want to make sure that the record reflected that [Defense counsel] has agreed to enter into a waiver of any irregularities in the indictment and that the government is agreeing that the indictment he's pleading to is the fifty grams . . . ." It is not entirely clear on the present record what the alleged irregularities were, but it is clear the government believed there was a benefit to be gained by accepting Defendant's plea to the fifty-gram conspiracy indictment. To the extent the government now suggests that the court was bound by a *de facto* mandatory minimum of ten years for the uncharged crime, the government ignores the benefit of the bargain granted to Defendant in the plea agreement.

While a court may take into consideration the benefits of a plea agreement, the facts surrounding uncharged conduct, or the benefits of lenient charging decisions in fashioning a sentence, it is not required to do so. See, e.g., United States v. Mack, 452 F.3d 744, 745-46 (8th Cir. 2006) (holding that, in sentencing a defendant for his sexual abuse of a minor, the sentencing court could consider the defendant's possession of child pornography where the pornography was related to the abuse and the government had originally indicted defendant for abuse and possession, but the government had dismissed the possession charge during the plea process). On the present record, we do not know why the government agreed to accept Defendant's plea to the lesser charge, but we do not believe the possibility of a greater indictment gives rise to a *de facto* mandatory minimum. As such, the district court acted within the permissible range of discretion when it acted without reference to the ten-year mandatory minimum applicable to the greater, but uncharged offense.

Regarding the district court's weighing of proper factors, we note that Defendant's criminal history and role in the offense were already addressed in the advisory Guidelines computations, and the district court expressly stated that these two factors alone were responsible for eighty months' worth of the ninety-two month departure. We stated in United States v. Plaza, 471 F.3d 876, 879 (8th Cir. 2006) that

"[w]hile the district court can consider facts taken into account by the guidelines in its analysis, it cannot solely rely on these facts to support a substantial downward variance." Here, we do not believe the district court ran afoul of Plaza. Even though criminal history is taken into account in determining the proper advisory Guidelines range, overstated criminal history has always been a permissible basis for a departure or a variance. See United States v. Beal, 463 F.3d 834, 836-37 (8th Cir. 2006) (discussing downward variances and departures based on overstated criminal history and suggesting that the one-category limitation on departures under U.S.S.G. § 4A1.3(b)(3)(A) provides helpful guidance on the appropriate scale of criminal history-based downward variances post- Booker). The court in the present case stated that, if it had assessed Defendant one rather than two criminal history points for the California drug offense, Defendant would have had a category I criminal history and the advisory Guidelines range would have been lowered to 168-210 months' imprisonment. This clearly explains the district court's twenty-month, criminal history-based variance. This was consistent with our guidance in Beal and was well within the district court's considerable range of discretion. Where, as here, a sentencing court fully explains a well-reasoned rationale for rejecting an advisory Guidelines range under § 3553(a), and that explanation relies on grounds more nuanced and specific than provided within the Guidelines, we do not believe there is a violation of the general rule articulated in Plaza even if the advisory Guidelines calculations considered the same general subject matter.

This principle applies with equal force to the district court's assessment of Defendant's role in the offense as a mid-level conspirator. The government argues that the two-level supervisory role enhancement adequately addressed the issue of Defendant's role in the offense. The government also argues that the district court's variance based on Defendant's mid-level role failed to adequately take into consideration the important sentencing goal and specific sentencing factor of minimizing disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6). Contrary to the government's arguments, we interpret the district court's detailed and

nuanced explanation of its sentencing decision to reflect serious consideration of this sentencing factor. While we may not agree with the sentencing court's precise determination of the amount by which it decided to vary, the sentencing court, and not this appellate body, holds the discretion in this regard. While the overall sentence imposed in this case appears to test the limits of that discretion, we do not find that discretion to have been abused.

Although the downward variance in this case was substantial, the overall sentence was reasonable. The judgment of the district court is affirmed.

_____