# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3018

_____

United States of America,         *
                        *
         Appellant,     *
                        *   Appeal from the United States
   v.                  *   District Court for the
                        *   Eastern District of Missouri.
Marlon J. Bradford,        *
                        *
         Appellee.      *

_____

Submitted: April 11, 2007
Filed: August 28, 2007

_____

Before WOLLMAN, RILEY, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

     This case is once again before us. In our prior ruling, we vacated Marlon J. Bradford's sentence of 36 months' imprisonment as unreasonable and remanded the case to the district court for resentencing. United States v. Bradford, 447 F.3d 1026, 1029 (8th Cir. 2006) (Bradford I). On remand, the district court treated Bradford, a career criminal, as a criminal history category I offender, and imposed a sentence of 60 months' imprisonment—amounting to a 45% variance from the low end of the applicable guidelines range. On appeal, the government argues that the sentence is unreasonable. We vacate the sentence and remand to the district court for resentencing.

## I. Background

The facts relevant to this appeal are as follows. Bradford pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Pursuant to his plea agreement, the government dismissed charges related to a third count of firearm possession in furtherance of a drug trafficking crime.

The United States Probation Office prepared a presentence investigation report (PSR) detailing Bradford's criminal history.[1] Although we described them fully in Bradford I, 447 F.3d at 1027-28, we relate some of the more notable incidents here. On February 4, 1991, when Bradford was seventeen, he was arrested and subsequently convicted of assault in the second degree for beating a man with a baseball bat. On January 25, 1993, when he was nineteen, he was arrested and later convicted of assault in the second degree for choking his mother, hitting her on the back of the head with a large vase, throwing her down a flight of stairs, kicking her, and striking her repeatedly with a phone. On August 27, 1993, he was arrested and subsequently charged with third degree assault for hitting a woman's head against a wall. On July 21, 1993, he fired a weapon at a police officer, which resulted in a conviction for assault in the first degree and four counts of unlawful use of a weapon. As recently as September 1, 1996, when Bradford was twenty-two, he struggled with police officers as they arrested his girlfriend following a disturbance in a theater. During the fray, he tore the officers' uniforms and had to be subdued with pepper spray. For his involvement in the incident, he was arrested and charged with disorderly conduct, trespass on private property, resisting arrest, and destruction of city property. Despite his extensive record of violent and unlawful behavior, Bradford consistently received

---

[1]Bradford did not object to the PSR's factual allegations, and so we accept them as true. See United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006).

suspended sentences or probation and never once received a prison sentence. Based on Bradford's criminal history, the district court concluded that he was as a criminal history category VI career offender.[2] The district court also concluded that Bradford's total offense level was twenty-five, which corresponds to a guideline sentencing range of 110 to 137 months' imprisonment.

The district court concluded that Bradford's criminal history was overstated, however, because none of his prior offenses had involved drugs, because Bradford had been relatively young at the time he committed the offenses, and because it had been nearly ten years since his last offense. See id. at 1028. As a result, the district court granted an extraordinary variance by imposing a thirty-six month sentence. See id. On appeal, we held that the sentence was unreasonable, noting that the district court's sentence was beneath even what it would have been had Bradford not had any prior offenses and been placed in a criminal history category of I. Id. at 1028-29. We held that the district court's belief that Bradford's criminal history score was overstated did not support the extraordinary variance, and we reversed and remanded the case for resentencing. Id.

At resentencing, while explaining its decision to impose a sentence of sixty months' imprisonment, the district court reiterated its conclusion that the sentence range recommended by the guidelines overstated Bradford's criminal history:

---

[2]Section 4B1.1(a) of the United States Sentencing Guidelines Manual (U.S.S.G.) designates a defendant as a career offender if

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The Court believes that Mr. Bradford's criminal history is overstated, and I'm looking at his relative youth, the nature and circumstances of this offense as well as the history of Mr. Bradford. He hadn't been in trouble for a significant period of time. The last felony conviction was in '93. And he will be under supervision by The Court for a significant period of time. And I think the sentence The Court is going to impose will reflect the seriousness of the offense. I think that Mr. Bradford has a respect for the law in terms of the programs and activities that he's been involved in, and that this will be adequate deterrence for any future illegal conduct and it will protect the public from any further crimes by Mr. Bradford.

. . . .

I think this will be an appropriate sentence as to what is available. And as far as this disparity of sentences is concerned, I think that this is a reasonable sentence when one looks at the youth of Mr. Bradford when he committed his earlier offenses and the time period there. I generally do not have cases where people are in a career offender category where there is this youth involved and this long time period between the time that they have committed another offense.

Resent. Tr. at 20-21. The district court also recognized that Bradford had been involved in volunteer programs and acted as a role model for children. Resent. Tr. at 22.

## II. Discussion

We review the reasonableness of a defendant's sentence for abuse of discretion. United States v. Lozano, 486 F.3d 446, 448 (8th Cir. 2007) (citing United States v. Donnelly, 475 F.3d 946, 955 (8th Cir.), *cert. denied*, 127 S. Ct. 2954 (2007)). "[A]n abuse of discretion may occur when (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but

in weighing those factors commits a clear error of judgment." United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005) (internal quotation omitted). "We ask 'whether the district court's decision to grant a [18 U.S.C.] § 3553(a) variance from the appropriate guidelines range is reasonable,' and if granting the variance is reasonable, then we ask whether the extent of the variance is reasonable." United States v. Feemster, 483 F.3d 583, 586 (8th Cir. 2007) (quoting United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005)). "As the size of the variance grows, so too must the reasons that warrant it." United States v. Medearis, 451 F.3d 918, 920 (8th Cir. 2006) (citing United States v. Larrabee, 436 F.3d 890, 892 (8th Cir. 2006)). This amounts to a proportionality principle. United States v. Repking, 467 F.3d 1091, 1095 (7th Cir. 2006) (per curiam). At the principle's extreme, extraordinary deviations from guideline recommendations require extraordinary circumstances. See Larrabee, 436 F.3d at 892 (citing United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005)).

The government contends that the sentence is unreasonable because Congress chose not to create separate classifications for career criminal offenders who commit multiple felonies at a relatively young, albeit still adult, age. In any event, the government also points out that where the criminal history is overstated, the sentencing guidelines permit a reduction of a single criminal history category – far less than the five criminal history categories granted by the district court's variance. Bradford maintains that the district court considered the § 3553(a) factors and that because a 45% reduction does not qualify as extraordinary, it should be accorded substantial deference.[3] We find Bradford's argument unpersuasive.

---

[3]Bradford actually argues that the variance amounted to a 40% reduction because the district court first granted a traditional departure pursuant to U.S.S.G. § 4A1.3 that resulted in a sentencing guideline range of 100 to 125 months' imprisonment for criminal history category V instead of the 110 to 137 months' imprisonment at criminal history category VI. This argument mischaracterizes the record. Nowhere in the sentencing transcript does the district court grant such a departure.

Bradford first argues that the government seeks a more stringent review of the attending circumstances by improperly comparing his case with those involving "extraordinary" reductions in excess of 50%. The language of our prior decisions has indeed required extraordinary circumstances to justify reductions in excess of 50% from the guideline recommendations. See, e.g., United States v. Meyer, 452 F.3d 998, 1001 (8th Cir. 2006) (citing decisions in which departures or variances above 50% were considered extraordinary), *petition for cert. filed* (U.S. Nov. 27, 2006) (No. 06-8085). Nevertheless, this does not mean that a party can ward off the application of the proportionality principle altogether by invoking the fact that a reduction falls short of the 50% mark. See, e.g., United States v. Jimenez-Gutierrez, No. 06-1566, 2007 WL 1855644, at *3 (8th Cir. June 29, 2007) (treating a 49% downward variance similarly to those we have considered extraordinary). Only sentences within the guidelines range have been declared to be presumptively reasonable. Cf. United States v. Beal, 463 F.3d 834, 836 (8th Cir. 2006). While the circumstances cited by a district court to justify a 45% variance may permissibly be of lesser strength than those properly associated with reductions slightly in excess of 50%, the difference in the required strength of circumstances between such close variances is not as great as Bradford might wish. Cf. United States v. Morales-Uribe, 470 F.3d 1282, 1287-88 (8th Cir. 2006) (reversing a 44% downward variance in the case of a non-violent first-time offender). Viewed in another way, the variance spanned a full seven offense levels within criminal history category VI. We have elsewhere held that "a reduction of six guideline ranges is significant in the context of an advisory guideline system where the degree of most aggravating and mitigating adjustments is two, three, or four offense levels." United States v. Jensen, Nos. 06-2284, 06-2497, 2007 WL 1837018, at *4 (8th Cir. June 28, 2007). Accordingly, the ostensibly moderate 45% percent variance may deceptively understate the true import of the district court's sentencing decision.

Although the sentencing guidelines do not confine the scope of a post-<u>Booker</u> variance, the "Guidelines and the commentary [are relevant to] our assessment of reasonableness . . . ." <u>Beal</u>, 463 F.3d at 837 (declaring unreasonable a variance that substantially exceeded one criminal history category that was imposed on a career offender as a result of a criminal history overstatement); <u>see also</u> United States Sentencing Guidelines Manual (U.S.S.G.) § 4A1.3(b)(3)(A) ("The extent of a downward departure . . . for a career offender . . . may not exceed one criminal history category."); Jimenez-Gutierrez, 2007 WL 1855644, at *5 (noting the relevance of <u>Beal</u> and recognizing the importance of U.S.S.G. § 4A1.3(b)(3)(A)). Section 4A1.3(b)(1) of the U.S.S.G. directly states that traditional departures "'may be warranted' if there is 'reliable information' indicating 'that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes.'" <u>Beal</u>, 463 F.3d at 836-37 (quoting U.S.S.G. § 4A1.3(b)(1)). Section 3553(a)(5) calls for the district court to consider "pertinent policy statement[s] . . . issued by the Sentencing Commission" in effect on the defendant's date of sentencing. 18 U.S.C. § 3553(a)(5).

The sentencing guidelines expressly limit the extent of a departure to a single criminal history level in those cases in which the district court determines that the career offender's criminal history is overstated. In establishing that limitation, the Sentencing Commission did not create or even acknowledge sub-tiers of career offenders based either on the duration of time between felonious acts or the relative youth of the defendant when he committed the prior felonies. <u>See</u> <u>Beal</u>, 463 F.3d at 837 ("While we recognize that not all career offenders have the same severity of criminal conduct in their background, we also must acknowledge that Congress made the decision to not differentiate between levels of career offenders."); <u>cf. United States v. Maloney</u>, 466 F.3d 663, 669 (8th Cir. 2006) (noting that relative youth may apply to many career offenders, and that it is unlikely that district courts will uniformly adopt a particular approach). Congressional policy also urges the imposition of a sentence at or near the maximum term authorized by the sentencing guidelines for the

offenses of career offenders.  28 U.S.C. § 994(h); <u>United States v. McDonald</u>, 461 F.3d 948, 955 (8th Cir. 2006).

Although the district court has some discretion to find that, on balance, other factors militate against the imposition of a sentence consistent with the sentencing guidelines and the underlying congressional priorities embodied therein, the district court failed to enunciate a sufficiently strong and legitimate rationale to justify reducing Bradford's criminal history category on an order of five times what Congress had intended to be possible.[4]  In fact, instead of taking full measure of congressional priorities as reflected in the guidelines provisions governing the definition and sentencing of "career offenders," the district court replaced the concept with its own understanding of the term: "When someone thinks of a career criminal, I think they are thinking of someone who is in continuous activity.  I understand what the statute says, but, I mean, I think there is an ability to exercise some discretion."  Resent. Tr. at 10-11.  Although it is appropriate for the district court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, <u>see</u> § 3553(a)(1), the extent of the district court's sentence reflects an overemphasis on the relevance of these details and accords insufficient weight to existing congressional policy and the need to minimize sentencing disparities.  Accordingly, we vacate the sentence and remand the case to the district court for resentencing in accordance with the views expressed in this opinion.

———————————————————

[4]Bradford argues that the district court did consider each of the § 3553(a) factors.  We agree with the government, however, that the court's analysis of the remaining factors does not compensate for its improper weighting of Bradford's history and characteristics and the relevant congressional priorities.