# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3252/3581

_____

United States of America,       *
                                *

          Appellee/Cross-Appellant,  *
                                *   Appeal from the United States

v.                      *   District Court for the
                                *   Southern District of Iowa.

Christopher Orville Myers,    *
                                *

          Appellant/Cross-Appellee.  *

_____

Submitted: June 12, 2007
Filed: October 4, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Christopher Orville Myers appeals his convictions for mailing threatening communications. He contends that the district court [1] violated his Sixth Amendment right to self-representation by denying a continuance, erred in admitting evidence of other wrong acts, and should have held evidentiary hearings on his motions for a new trial. He also claims that the evidence was not sufficient to support the conviction. The United States cross-appeals, contending that the sentence is improper. Having

_____

[1] The Honorable Joseph F. Bataillon, Chief United States District Judge for the District of Nebraska, sitting by designation.

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms the convictions and the sentence.

## I.

In 2003, Myers was indicted for mailing threatening letters to the President and court officers. Myers pled guilty pursuant to a plea agreement. Chief District Judge Linda R. Reade presided over the case, sentencing Myers to 28 months incarceration. The guidelines range was calculated as 37 to 46 months, as reflected in the plea agreement. The court's sentence of 28 months represented a downward departure of 24 percent (or 3 levels).

Myers, a "problem" inmate, was placed in segregation at Corrections Corporation of America Leavenworth ("CCA"). Because he repeatedly tried to put unauthorized items in his legal mail, his unsealed mail was inspected in front of a CCA employee.

On the morning of July 27, 2005 – eight days after sentencing – Myers was transferred out of the CCA. The CCA mailroom staff recall that the general outgoing mail that day contained legal mail belonging to Myers. Six days later, an envelope – metered on July 27 at the CCA – was received by a clerk of the Southern District of Iowa. It contained three letters: one addressed "to whom it may concern," one to Judge Reade, and one to Myers's public defender. The letter "to whom it may concern" states that "2 threatening letters" are enclosed in order to "try to obtain justice." The letter also says that a copy was sent to the Eighth Circuit Court of Appeals, the United States Supreme Court, and the television networks. The letter concludes that the letters "serve[] no purpose other than to vent rage." The letter to Judge Reade included:

Your days are numbered lying bitch. I trusted your sorry bitch ass and you screwed me over real good . . . . I am going to kill your sorry bitch ass to put you out of your fucking misery you sorry bitch lying piece of shit . . . . You bitch ass punks made me lie in court and say I was guilty of something I did not do . . . . You can go burn in hell with your father saton [sic] and all the rest of your kind . . . you best enjoy the next 2 years because then you can kiss your sorry bitch ass goodbye because your going to hell. I am going to get my day in court one way or another and I am going to send you to hell to be with your father saton [sic].

The clerk who received the envelope was familiar with Myers because of his voluminous *pro se* filings. She recognized the letters as consistent in appearance with others that Myers had sent. Myers' fingerprints were on the letters; handwriting analysis confirmed that Myers wrote the letters and addressed the envelope.

Myers was indicted on three counts: a violation of 18 U.S.C. § 876(c) for mailing a threatening letter to Judge Reade; a violation of 18 U.S.C. § 115(a)(1)(B) for retaliating against Judge Reade; and a violation of 18 U.S.C. § 876 (c) for mailing a threatening letter to his federal public defender. Myers proceeded *pro se* with standby counsel. Before trial, two separate standby counsel withdrew. Myers was appointed a third standby counsel. He moved for a continuance a month before trial. The district court denied the continuance a week before trial, and re-sustained the denial on the first day of trial. Myers allowed standby counsel to represent him once the denial was re-sustained. During trial, the court admitted testimony about new threatening letters that Myers had mailed to the Magistrate Judge and the Assistant United States Attorney during the litigation. The court also admitted the government's Exhibit 10, a filing by Myers accusing a county jail of mailing the new letters without his consent. The jury found Myers guilty on counts one and two, after

the court acquitted him on count three (the public defender testified he did not consider the letter threatening). The district court sentenced Myers to 60 months imprisonment on counts one and two, to run concurrently, and three years of supervised release.

## II.

Myers argues that the district court violated his Sixth Amendment right to self-representation by denying his motion for a continuance. "A trial judge has broad discretion in deciding whether to grant or deny a motion for a trial continuance." *United States v. Heine,* 920 F.2d 552, 555 (8th Cir. 1990). *See generally United States v. Pruett,* 788 F.2d 1395, 1396 (8th Cir. 1986)(district court considerations in ruling on a motion for continuance). To determine whether an abuse of discretion occurred, this court looks at three factors: (1) whether counsel had sufficient time to prepare for trial; (2) whether counsel's conduct at trial shows that counsel was well prepared; and (3) whether the denial of the continuance prejudiced the defendant. *Heine,* 920 F.2d at 555.

The district court did not abuse its discretion by denying the continuance. Myers had sufficient time, over nine months, to prepare. During this time he made hundreds of *pro se* filings, many frivolous or repetitive. Myers contends that he was denied access to his legal files (including the government's discovery) unless standby counsel was present. This was due largely to Myers' own actions; he was prohibited from having legal material in his cell because he was throwing feces through the mail slot and using documents to plug the toilets. Myers also contends that, until a month before trial, he did not have access to 24 boxes of documents and tape recordings from his earlier trial. This claim is without merit. The record shows that the boxes were returned to Myers's mother after his previous trial, and his standby counsel had canvassed the boxes and given Myers copies of documents from them.

The fact that Myers's standby counsel did not request a continuance once he became trial counsel, indicates that the defense was well prepared for trial. Meyers was not prejudiced by the denial of a continuance. In fact, counsel obtained an acquittal on the third count. Myers was also not prejudiced by "being forced" to allow standby counsel to represent him at trial. While the Sixth Amendment allows a defendant to represent himself at trial, that right is not absolute. *United States v. Edelmann,* 458 F.3d 791, 807 (8th Cir. 2006). A trial judge may terminate self-representation when the defendant engages in serious obstructionist misconduct. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Because of Myers's obstructionist conduct before trial, the district court did not err in denying the continuance, even if he eventually accepted representation. *See Edelmann*, 458 F.3d at 808-09 ("The right [to self-representation] does not exist . . . to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process.") *quoting United States v. Frazier-El,* 204 F.3d 553, 560 (4th Cir.2000).

III.

Myers asserts that the district court erred in admitting the evidence of the new threatening letters he mailed during the litigation, and his filing accusing another jail of mailing the letters without his consent. Myers challenges the evidence under Federal Rules of Evidence 404(b) and 403.

Rule 404(b) prohibits evidence of other wrong acts to prove a person's character and conformity therewith. However, this same evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." **Fed. R. Evid. 404(b).** Whether Myers caused the threatening letters to be mailed was the main issue in the case. Myers's defense was that CCA officials sent the letters without his consent. Evidence of the new threatening letters, and the accusation against other

jail officials, are admissible under Rule 404(b) to show absence of mistake or accident.

Myers counters that the wrongful acts were not probative because they occurred a year after the acts charged in the indictment. Myers acknowledges that "mere subsequency" does not render them inadmissable. *See **United States v. Wonderly,*** 70 F.3d 1020, 1023 n.2 (8th Cir. 1995)(wrongful acts committed after the acts charged in the indictment are admissible under Rule 404(b) to show absence of mistake or accident where the defense was good faith). As for his objection based on remoteness in time, a one-year gap does not necessarily destroy the probative value of the evidence. *See **Edelmann,*** 458 F.3d at 810 (prior bad acts 15 years old were probative because of the similarities with the crime charged). The district court did not err in admitting the evidence under Rule 404(b).

Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. ***United States v. Henderson***, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied,* 546 U.S. 1175 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." ***Wade v. Haynes***, 663 F.2d 778, 783 (8th Cir.1981), *aff'd sub nom.* ***Smith v. Wade***, 461 U.S. 30 (1983). The evidence Myers challenges does not suggest that the jury decide on an improper basis. The evidence is probative of the main issue, whether Myers actually mailed the letters. The district court did not abuse its discretion in finding that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, and thus admitting this evidence under Rule 403.

IV.

According to Myers, the district court erred in not holding a hearing on his post-trial motions. "The district court has broad discretion in deciding whether to hold a hearing." *United States v. Provost,* 921 F.2d 163, 164 (8th Cir. 1990). Though Myers mentions at least nine post-trial motions in his brief – several of which repeat his other arguments – he focuses on three motions.

A.

In his motion for a new trial due to denial of due process, Myers alleges that the government suborned perjury by a CCA mail officer. To show a violation of due process based on the government's suborning perjury, Myers must demonstrate that (1) the prosecution used perjured testimony, (2) the prosecution should have known or actually did know of the perjury, and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict. *United States v. Bass,* 478 F.3d 948, 951 (8th Cir. 2007).

Myers argues that the officer lied when testifying that she saw his letter in the prison mail the day he was transferred. Myers emphasizes that the investigating agent's report did not mention this. However, the postmark on the letter (indicating CCA Leavenworth) and another witness's testimony (that the officer handed her a letter from Myers on his transfer day) corroborate the officer's testimony. Therefore, Myers cannot show that the prosecution used perjured testimony. The district court did not err in denying an evidentiary hearing on the perjury motion for new trial.

B.

Myers also states that the district court erred by not granting a hearing on his motion for a new trial due to newly discovered evidence. To get a new trial for newly

discovered evidence, Myers must show: (1) the evidence is in fact newly discovered since trial; (2) diligence on his part; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) it is probable that the new evidence would produce an acquittal at the new trial. *Provost,* 921 F.2d at 164.

The evidence at issue was tapes of (Myers alleges) conversations with CAA officials and state-prison inmates. Myers offered no explanation why the tapes were not discovered before trial, or how the tapes were material to the case. The district court did not err by denying an evidentiary hearing on newly discovered evidence. *See United States v. Turk,* 21 F.3d 309 (8th Cir. 1994)(district court did not abuse its discretion in denying new trial based on new evidence where the defendant did not meet three of the requirements).

## C.

Myers requested an evidentiary hearing on his motion for a new trial, to consider whether the government improperly released information from his prior case to the media in order to influence the jury. The district court instructed jurors not to read, listen, or watch any media coverage about the case, and to decide solely on evidence presented in the courtroom. "A jury is presumed to follow its instructions." *Weeks v. Angelone,* 528 U.S. 225, 234 (2000). Myers points to no evidence that the jury did not follow the instruction. Therefore, it was not an abuse of discretion to deny an evidentiary hearing on this allegation.

## V.

Myers contends that the evidence was insufficient to support his conviction. This court must "view the evidence in the light most favorable to the government and

accept all reasonable inferences that support the jury's verdict." ***United States v. Allen,*** 440 F.3d 449, 450 (8th Cir.), *cert. denied,* 127 S.Ct. 458 (2006). The verdict is upheld if supported by evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. ***Id.***

Myers admitted writing the letters, and the jury accepted Judge Reade's testimony that the letter to her was threatening. Therefore, the key issue was whether Myers caused the letter to be mailed. "It is well settled that use of the mails, like most other facts, may be established by circumstantial evidence." ***United States v. Scott,*** 668 F.2d 384, 388 (8th Cir. 1981). There was strong circumstantial evidence that Myers caused the letter to be mailed. Handwriting analysis showed he addressed the envelope; two CCA officers recalled seeing the letter in the outgoing mail the day Myers was transferred; Myers often sent letters to the United States District Court for the Southern District of Iowa; and Myers had a history of sending threatening letters to people in positions of authority. Based on this evidence, a reasonable jury could find Myers guilty beyond a reasonable doubt.

VI.

At sentencing, the court first determined the guidelines range as 100 to 125 months (for base offense level 24, criminal history category VI). The court then rejected a downward departure under U.S.S.G. § 5K2.13 as not authorized because the "offense clearly involves a serious threat of violence." Next, the court approved a downward departure under U.S.S.G. § 5K2.0 because the circumstances of the case were "outside the heartland" of cases covered by the guidelines. Based on the same circumstances, the court alternatively concluded that a non-guidelines sentence was appropriate. The court sentenced Myers to 60 months incarceration, a downward variance of 40 percent (or 6 levels) from the bottom of the guidelines. The government asserts: (1) the court did not establish a final guidelines sentence before granting a variance; (2) the 5K2.0 downward departure was improper; and (3) the variance was unreasonable.

## A.

"When determining a sentence, the district court must first ascertain the governing guidelines range, then consider any permissible departures within the guidelines' structure, and finally, post-*Booker*, decide whether a non-guidelines sentence is more appropriate under the circumstances." ***United States v. Burns,*** ___ F.3d ___, ____ (8th Cir. 2007)(en banc).

The parties agree that the guideline range was correct. Contrary to the government's contention, the district court did identify the amount of the departure and establish a guidelines sentence. The court clearly stated that the amount of the departure was 40 percent (or 6 levels) – resulting in a guidelines sentence of 60 months – the same as the 3553(a) sentence alternatively imposed.

The district court addressed the 5K2.0 departure in a short paragraph. The district court stated that Myers's "diminished capacity" – the key basis for the departure – was "not taken into consideration by the Sentencing Commission in formulating the guidelines." This is error. "[T]he Sentencing Commission adequately considered the circumstances for downward departure based on diminished mental capacity when it formulated section 5K2.13, thus foreclosing consideration of diminished mental capacity under section 5K2.0." ***United States v. Dillard,*** 975 F.2d 1554, 1554 (8th Cir. 1992)(involving violent offense under 5K2.13). Because the district court ruled that Myers was not eligible for a 5K2.13 departure, the court erred in granting the 5K2.0 departure.

This error may be harmless, however, because of the alternative 3553(a) sentence. *See* ***United States v. Hadash,*** 408 F.3d 1080, 1083 (8th Cir. 2005)(sentencing error was harmless where the district court alternatively varied to the same level as an improper departure). Guidelines departures and post-*Booker* variances are different. ***United States v. Robinson,*** 454 F.3d 839, 842 (8th Cir. 2006). "There may well be cases that would not justify a departure under the Guidelines but which are appropriate for a variance." ***Id.***

B.

The issue is whether the variance resulted in an unreasonable sentence under 3553(a).  The standard of review for reasonableness is akin to traditional abuse of discretion review.  *United States v. Jimenez-Gutierrez,* 491 F.3d 923, 927 (8th Cir. 2007).  There is an abuse of discretion if the district court relies on improper factors, fails to consider relevant factors, or demonstrates a clear error in judgment in weighing the relevant factors.  *Id.* A variance must be based on the factors in 18 U.S.C. § 3553(a).[2]  The "farther the district court varies from the presumptively reasonable guidelines range, the more compelling the justification based on the § 3553(a) factors must be."  *United States v. McMannus,* 436 F.3d 871, 874 (8th Cir. 2006).  A 40 percent (or 6 level) variance is substantial.  *See United States v. Gatewood,* 438 F.3d 894, 896 (8th Cir. 2006), *United States v. Plaza,* 471 F.3d 876, 879 (8th Cir. 2006).  Therefore, the justification must be proportionally compelling.

---

[2] 18 U.S.C. § 3553(a) states:  "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of this subsection.  The Court shall consider in determining the sentence:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed

    (A)     to reflect the seriousness of the offense, promote respect for the law, and provide just punishment;

    (B)     to afford adequate deterrence to criminal conduct;

    (C)     to protect the public from further crimes of the defendant; and

    (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the sentencing range from the guidelines;

(5)     any pertinent policy statements by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to victims.

Reviewing whether the sentence was within the range of choice available to the district court, this court recognizes that the "sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." *Rita v. United States,* 127 S. Ct. 2456, 2469 (2007).

Reviewing each 3553(a) factor, the district court based the variance on a number of findings, summarized in its 14-page sentencing memorandum, including: (1) Myers "is a seriously mentally ill individual who has essentially been institutionalized or incarcerated for most of his life;" (2) he has been diagnosed with Attention Deficit Hyperactivity Disorder, Personality Disorder with paranoid, anti-social borderline traits, Disruptive Behavior Disorder, and Tourette's Syndrome, as well as evidence of organic and neurological involvement; (3) his mental illness interfered with his ability to control his impulses and reduces his culpability for his action; (4) he acknowledged at sentencing his mental impairment and his desire to obtain help and treatment; (5) he never carried through on a threat; (6) the threats were designed to get attention; (7) the sentence imposes a substantial amount of prison time to deter other criminal conduct; (8) the 60-month sentence provides Myers with medical care and correctional treatment in the most effective manner; and (9) the sentence provides needed educational or vocational training. The district court recommended to the Bureau of Prisons that Myers be placed in a mental health facility and participate in mental health treatment (with eventual recourse to civil commitment, if needed). Additionally, the court imposed special conditions of supervised release in order to protect the public from further crimes, noting the court's ability to revoke supervised release.

The government attacks, as inconsistent with the jury's verdict, the district court's finding that the threats were designed to get attention. This court reviews a district court's factual finding for clear error. *United States v. Gillispie*, 487 F.3d 1158, 1162 (8th Cir. 2007). The finding that the threats were only designed to get attention is consistent with the jury's verdict. To reach its verdict, the jury did not

need to determine Myers's intent because the intent of the sender is not an element of the offense of mailing threatening communications. *United States v. Patrick,* 117 F.3d 375, 377 (8th Cir. 1997).

The government also suggests that the designed-to-get-attention finding is inconsistent with the court's ruling that a 5K2.13 departure is not authorized because the offense clearly involves a serious threat of violence. In denying the 5K2.13 departure, however, the district court invoked only the statutory definition, and did not consider Myers's intent.[3] While Myers did make violent threats, he sent the clerk a cover letter stating that "there are 2 threatening letters enclosed." The cover letter also said that the letters "serve[] no purpose other than to vent rage" and that he sent copies to the Eighth Circuit Court of Appeals, the United States Supreme Court, and televison networks. These public, on-the-record acts show someone who seeks attention, not someone who intends to carry through on threats. The district court's designed-to-get-attention finding is consistent with the denial of a 5K2.13 departure in this case.

---

[3] Because the district court in fact did not consider Myers's intent in denying the 5K2.13 departure, this court need not decide whether intent is an element of a serious threat of violence under 5K2.13. Section 5K2.13 prohibits a departure for diminished mental capacity if the "offense involved actual violence or a serious threat of violence." **U.S.S.G. § 5K2.13.** *United States v. Mayotte*, 76 F.3d 887, 889 (8th Cir. 1996), suggests that intent is not a element of 5K2.13 because (1) a "'non-violent offense' necessarily excludes a 'crime of violence'" under U.S.S.G. § 4B1.2, *see United States v. Petersen,* 276 F.3d 432 (8th Cir. 2002)(same), and (2) intent is not an element of a crime of violence under 4B1.2. *See* **U.S.S.G. § 4B1.2** (defining a crime of violence as "any offense under federal or state law punishable by imprisonment for a term exceeding one year, that has as an element the use, attempted use, or threatened use of physical force against the person of another"). However, the term "non-violent offense," which *Mayotte* and *Petersen* were addressing, was removed from 5K2.13. *See* **United States v. Wood,** 364 F.3d 1000, 1001 (8th Cir. 2004)(per curiam)(concluding on rehearing that the court was not bound to follow *Petersen* because the government conceded that the 4B1.2 definition of crime of violence did not control the analysis of 5K2.13, but noting that "*Petersen* remains on the books as available precedent").

According to the government, the district court considered an irrelevant factor, Myers's previous below-guidelines sentence of 28 months. True, a lenient sentence in the past does not guarantee a lenient sentence in the future. *See United States v. Beal*, 463 F.3d 834, 837 (8th Cir. 2006)(district court placed too much weight on the lenient sentence the defendant received for previous felonies), *petition for cert. filed*, (Dec. 21, 2006)(No. 06-8498). The previous sentence is, however, not irrelevant. The district court did not base its sentence solely on a previous lenient sentence. The district court considered the guidelines and all the other 3553(a) factors, including the previous sentence.

The government asserts that the district court did not take into account the congressional determination that career offenders should be sentenced near the statutory maximum. *See* **28 U.S.C. § 994(h)**(instructing the Sentencing Commission to assure the guidelines specify a term of imprisonment near the statutory maximum for repeat offenders of particular crimes). The district court stated: "Because of Myers's status as a career offender, the advisory guidelines sentencing range is artificially high in comparison to Myers's conduct." "[T]he guidelines themselves have recognized that the career offender enhancement can often result in a gross overstatement of a defendant's criminal history." *United States v. Freemster*, 435 F.3d 881, 883(8th Cir. 2006). Although the guidelines permit only a one-category *departure* for defendants in this instance, U.S.S.G. § 4A1.3(b)(3), Myers's history was only one part of the district court's analysis under 3553(a). This court must "review a sentence for reasonableness based on *all* the factors listed in § 3553(a)." *United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005).

The government maintains that the 60-month sentence will create unwarranted sentencing disparity. A sentence is not unreasonable simply because it is creates some disparity between sentences. *See Rita,* 127 S.Ct. at 2466 ("[A]ppellate courts may not presume that every variance from the advisory Guidelines is unreasonable.") Any disparity created by this sentence is warranted. This is an unusual case with an unusual defendant. *See Rita,* 127 S.Ct. at 2469. ("A nonbinding appellate

reasonableness presumption for Guidelines sentences does not *require* the sentencing judge to impose a Guidelines sentence."). The district court found that Myers had extreme impulse-control problems as well as many other mental problems. This court "cannot isolate possible sentencing disparity to the exclusion of all the other § 3553(a) factors." *Winters,* 416 F.3d at 861.

The government contends that the district court did not weigh the 3553(a) factors correctly. It argues that Myers's mental problems show a need for extended incarceration. The district court carefully considered each 3553(a) factor and crafted a sentence that it felt was sufficient. *See **United States v. Rivera,*** 439 F.3d 446, 448 (8th Cir. 2006). The district court did not abuse its discretion in finding that a shorter period of incarceration, with mental health treatment and supervised release, is the most effective sentence. *See **United States v. Wadena,*** 470 F.3d 735 (8th Cir. 2006)("[E]ffective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing.").

"Where as here, a sentencing court fully explains a well-reasoned rationale for rejecting an advisory guidelines range under § 3553(a), and that explanation relies on grounds more nuanced and specific than provided within the Guidelines, [this court] do[es] not believe there is a violation." ***Jimenez-Gutierrez,*** 491 F.3d at 928. The district court here "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *See **Rita,*** 127 S.Ct. at 2468.

Taking into account the specifics of this case, this court cannot say that a sentence of 60 months, with 3 years supervised release, is unreasonable. *See **Rita,*** 127 S.Ct. at 2462 (appellate courts must "decide whether the District Court properly analyzed the relevant sentencing factors and whether, given the record, the District Court's ultimate choice of . . . sentence was "unreasonable"); ***United States v. White,*** ___ F.3d ___ (8th Cir. 2007)(upholding 33 percent (4 level) downward variance based on 3553(a) factors); ***Jimenez-Gutierrez,*** 491 F.3d 923 (upholding extraordinary downward variance of 49 percent (7 levels) based on 3553(a) factors); ***Wadena****, 470

F.3d 735 (upholding 100 percent (or 9 level) downward variance based on 3553(a));
***United States v. Kicklighter***, 413 F.3d 915 (8th Cir. 2005)(upholding 36 percent (5 level) variance as within the range of choice available to the district court).

VII.

The judgment of the district court is affirmed.

_____